# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Jones*, 2011 IL App (1st) 092529

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LORENZO JONES, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-09-2529 |
| Filed | August 5, 2011 |
| Rehearing denied | August 30, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's postconviction petition alleging ineffective assistance of his trial and postconviction counsel was properly dismissed over his contentions that he raised a substantial issue of ineffective assistance of counsel and that his postconviction counsel failed to comply with Supreme Court Rule 651(c). |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 97-CR-21326; the Hon. Charles P. Burns, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Sean Collins-Stapleton, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Kathleen Warnick, and Adam W. Delderfield, Assistant State's Attorneys, of counsel), for the People.

Panel

PRESIDING JUSTICE GARCIA delivered the judgment of the court, with opinion.

Justice Cahill concurred in the judgment and opinion.

Justice R. Gordon dissented, with opinion.

## OPINION

¶ 1    Defendant Lorenzo Jones appeals from the second-stage dismissal of his petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2002)). The defendant contends postconviction counsel failed to comply with Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984). He also contends his petition raised a substantial question regarding appellate counsel's performance when counsel failed to raise on direct appeal prosecutorial misconduct and trial counsel's deficient performance based on his failure to object to certain testimony and the State's closing argument. Appellate counsel, instead, filed a motion to withdraw, with a supporting brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), which we granted. *People v. Jones*, No. 1-99-0163 (2000) (unpublished order under Supreme Court Rule 23). On our *de novo* review of the instant appeal, we affirm.

¶ 2                                BACKGROUND

¶ 3    At the jury trial, the evidence established that the defendant fatally shot Jose Oquendo and fled to Mexico in the deceased's van. We quote from our original decision affirming the defendant's conviction and sentence.

"In this case, the victim, Jose Oquendo, died from a gunshot wound to his head. The evidence showed that the victim and defendant had been friends and defendant owed the victim a $1,500 gambling debt. On May 28, 1997, defendant shot the victim while sitting in the victim's van. Defendant then went to the victim's home, borrowed $10 from the victim's wife after propositioning her for sex, threw the gun into the river and dumped the body in an alley. He then drove the van to Mexico, where he sold it for $200. Defendant then relocated to Texas, where he remained until June 27, [1997]. After speaking with his mother on that date, defendant learned that the police were looking for him in Chicago, and he surrendered to police in

-2-

Camaron County, Texas. Defendant gave four versions of the events leading up to the victim's death, including his trial testimony." *Jones*, order at 2-3.

¶ 4    We add the following to give context to the defendant's ineffectiveness of counsel claims. Maria Oquendo, the deceased's widow, described her family including the children's names and ages, and identified a photograph depicting the deceased with their youngest child. She confirmed the deceased and the defendant were close friends. The defendant spent time at the Oquendo home and played with the Oquendo children. The men played cards on a monthly basis. The State elicited testimony from Maria regarding the deceased's last day. When the deceased left for work, he told Maria that he loved her. Later that day, she received a pager message that, when turned upside down, resembled the Spanish word for "kiss." According to Maria, the deceased paged her during the day because the family did not have a phone.

¶ 5    The State published the defendant's inculpatory statements that he shot the deceased in the back of the head and drove to Mexico in the deceased's van.

¶ 6    The defendant testified on his own behalf. He claimed the deceased threatened to kill him over the gambling debt, which prompted him to bring a gun to work. The defendant explained that after pointing the gun at the victim's head, he changed his mind about hurting his friend, but the gun accidently fired. He denied pulling the trigger.

¶ 7    During its opening closing argument, the State argued that the deceased's death was no accident and the defendant should receive no sympathy.

> "ASA MILLEVILLE: One person we can feel sorry for is Jose Oquendo. He's not here. He's not here to live, is not here to breathe, he's not a part of this world. You can feel sorry for his wife, his widow. Feel sorry for his son, who will grow up not knowing his daddy.
>
> DEFENSE COUNSEL: Objection your Honor.
>
> THE COURT: Overruled.
>
> * * *
>
> ASA MILLEVILLE: This is [the deceased's] only day. It's his family's only day. Their only day for justice. Their only day for you to do the right thing.
>
> DEFENSE COUNSEL: Objection.
>
> THE COURT: Overruled."

¶ 8    The defense argued to the jury that the gun went off accidently and that the defendant would have to live the rest of his life with the knowledge he was responsible for his friend's accidental death. In its rebuttal, the State dismissed the defendant's assertion that the shooting was an accident and asked the jury to hold the defendant responsible for his actions. Ultimately, the jury convicted the defendant of first degree murder and of possession of a stolen motor vehicle.

¶ 9    On direct appeal, appellate counsel filed an *Anders* motion. The defendant filed a response in which he contended "that the prosecutor's comments during closing arguments denied him a fair trial." *Jones*, order at 1. We undertook an independent review of the record with the respective filings by appellate counsel and the defendant in mind. We examined the

defendant's unfair trial claim under a plain error analysis. We concluded plain error relief was not warranted because "the evidence was not closely balanced nor was the error of such magnitude to deny defendant a fair trial." *Jones*, order at 4. We granted counsel's motion to withdraw. *Jones*, order at 5.

¶ 10    In 2002, the defendant filed a *pro se* petition for postconviction relief alleging that he was denied effective assistance of trial counsel by counsel's failure to file a motion to suppress evidence and counsel's failure to object to the State's closing argument. The petition also alleged ineffective assistance of appellate counsel when the State's misconduct was not challenged on direct appeal.

¶ 11    The trial court summarily dismissed the petition as untimely. This court reversed, and remanded for second-stage proceedings because "a circuit court may not summarily dismiss a post-conviction petition solely on the basis that it was not filed within the time limits of section 122-1(c) of the Post-Conviction Hearing Act." *People v. Jones*, No. 1-02-2435, order at 1 (2004) (unpublished order under Supreme Court Rule 23) (citing *People v. Boclair*, 202 Ill. 2d 89, 99 (2002)).

¶ 12    In October 2005, the defendant filed a *pro se* amendment to his 2002 postconviction petition alleging the State sought to inflame and prejudice the jury against the defendant, which denied him a fair trial. Specifically, the defendant highlighted comments regarding the deceased's family, including the ages of his children, as well as the prosecutor's statement that the trial was the day for the victim's family to receive justice. The petition alleged trial counsel failed to file a motion to suppress, the trial court erred by overruling defense objections to certain testimony, and appellate counsel was ineffective when counsel failed to raise these trial errors on appeal.

¶ 13    The record indicates the defendant filed a *pro se* amended postconviction petition in November 2005 alleging the trial court erred when, *inter alia*, it permitted the State to make comments that inflamed the jury's passions. The petition also claimed trial counsel was ineffective when, among other errors, he did not object to certain testimony; the petition claimed appellate counsel was ineffective when counsel failed to raise these trial errors on direct appeal.

¶ 14    The defendant filed two more supplemental *pro se* postconviction petitions, in August and September 2006. These petitions realleged the same claims from his earlier petitions.

¶ 15    In December 2008, counsel filed a certificate pursuant to Supreme Court Rule 651(c), showing that he had consulted with the defendant and reviewed the trial record. Counsel also asserted no amendments were necessary because the original *pro se* petition filed in February 2002 and the amended *pro se* petition filed in October 2005 adequately set forth the defendant's claims. The State filed a motion to dismiss, which the trial court granted. The defendant appealed.

¶ 16                                    ANALYSIS

¶ 17    The defendant raises two issues on appeal. He contends postconviction counsel failed to comply with Rule 651(c) and he contends his postconviction petitions raised a substantial question of ineffective assistance of counsel.

¶ 18                                    Rule 651(c) Issue

¶ 19        We first consider the defendant's claim that postconviction counsel failed to comply with
Rule 651(c) because, according to his brief, counsel failed "to examine three *pro se* amended
petitions filed during the proceedings." Specifically, he contends counsel did not examine
the *pro se* petitions filed in November 2005, August 2006, and September 2006. Our review
of compliance with a supreme court rule is *de novo*, which is also the standard to review a
second-stage dismissal of a postconviction petition. *People v. Suarez*, 224 Ill. 2d 37, 41-42
(2007).

¶ 20        Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984) imposes three duties on appointed
postconviction counsel. Pursuant to the rule, the record or the filed certificate must "disclose
that post-conviction trial counsel: (1) consulted with petitioner to ascertain his contentions
of constitutional deprivations; (2) examined the record of the proceedings of the original
trial; and (3) made any amendments to the *pro se* petition necessary to adequately present the
petitioner's constitutional contentions." *People v. Johnson*, 154 Ill. 2d 227, 238 (1993).

¶ 21        "There is no constitutional right to the assistance of counsel in postconviction
proceedings; the right to counsel is wholly statutory (see 725 ILCS 5/122-4 (West 2000)),
and petitioners are only entitled to the level of assistance provided by the Post-Conviction
Hearing Act." *Suarez*, 224 Ill. 2d at 42. The Act provides only reasonable assistance. *Id.*

¶ 22        Here, counsel filed a certificate pursuant to Rule 651(c), asserting he consulted with the
defendant, examined the trial transcript, and found the defendant's constitutional contentions
were adequately presented in the *pro se* petitions filed in 2002 and October 2005.

¶ 23        The filing of a Rule 651(c) certificate gives rise to a presumption that postconviction
counsel provided reasonable assistance during second-stage proceedings under the Act. See
*People v. Rossi*, 387 Ill. App. 3d 1054, 1060 (2009) (upon the filing of a certificate in
accordance with Rule 651(c), the presumption exists that postconviction counsel "adequately
investigated, amended and properly presented those claims contained within petitioner's
successive postconviction petition"). It falls on the defendant to overcome that presumption
by demonstrating counsel's failure to substantially comply with the duties mandated by Rule
651(c). See *People v. Richardson*, 382 Ill. App. 3d 248, 257 (2008) ("counsel substantially
complied with her specific duties under Rule 651(c)").

¶ 24        We find no authority for the defendant's assertion in his brief that because the certificate
filed pursuant to Rule 651(c) did not mention all of the *pro se* petitions filed by the
defendant, it follows that postconviction "counsel failed to review all of Lorenzo Jones' *pro
se* post-conviction claims." See *People v. Turner*, 187 Ill. 2d 406, 411 (1999) (defendant's
contention that postconviction counsel failed to examine the record of the proceedings at trial
because "transcripts for five dates *** were not included in the record on appeal" rejected
where no showing was made that support for the defendant's constitutional claims existed
in the missing transcripts). There is nothing in Rule 651(c) that suggests the certificate is
intended to be a comprehensive recounting of all of postconviction counsel's efforts. Nor
does the defendant point to one of the duties imposed by Rule 651(c) that postconviction
counsel failed to fulfill in order to undermine the presumption of compliance. See

*Richardson*, 382 Ill. App. 3d at 258 ("We also reject Richardson's fall-back argument that the presumption of compliance based on the filing of a certificate is overcome here.").

¶ 25 Most importantly, the defendant does not assert that the amended petitions, omitted from mention in the certificate, raised constitutional claims not considered by the circuit court in its ruling that the *pro se* petitions of February 2002 and October 2005 were subject to dismissal. In other words, he does not argue before us that a substantial question of a violation of the defendant's constitutional rights was raised in any of the "three *pro se* amended petitions filed during the proceedings" not mentioned in the Rule 651(c) certificate. This fact alone is fatal to the defendant's claim that postconviction counsel rendered unreasonable assistance under the circumstances of this case. See *Turner*, 187 Ill. 2d at 412 ("To require counsel to examine portions of the record which have no relevance to petitioner's claims would be an exercise in futility.").

¶ 26 This court will not presume that postconviction counsel failed to read or consider the contents of the defendant's multiple, repetitious *pro se* pleadings simply because counsel failed to mention them explicitly in the Rule 651(c) certificate. Nor will we conclude that postconviction counsel's efforts fell below the reasonable level of assistance mandated by the Act when the defendant fails to disclose a single claim from the three *pro se* petitions not mentioned in the Rule 651(c) certificate that should have been added to the petitions from 2002 and October 2005, but was not. We reject the defendant's claim that counsel's assistance was unreasonable where he fails to demonstrate how postconviction counsel violated Rule 651(c).

¶ 27                                    Ineffectiveness of Counsel Claims

¶ 28 The instant postconviction petitions were dismissed at the second stage of proceedings under the Act. To proceed beyond the second stage of proceedings under the Act, a defendant must make a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). Only upon a substantial showing of a constitutional violation is a defendant entitled to a third-stage evidentiary hearing. See *People v. Spreitzer*, 143 Ill. 2d 210, 218 (1991) (a defendant is not entitled to an evidentiary hearing unless the allegations in his postconviction petition, supported by the trial record and the accompanying affidavits, make a substantial showing that his constitutional rights were violated).

¶ 29 On review of a second-stage dismissal, all well-pled facts in the petition, not positively rebutted by the trial record, are taken as true; we review the dismissal *de novo*. *Pendleton*, 223 Ill. 2d at 473. "Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong." *People v. Easley*, 192 Ill. 2d 307, 329 (2000). "A defendant who contends that appellate counsel rendered ineffective assistance, *e.g.*, by failing to argue an issue, must show that the failure to raise that issue was objectively unreasonable and that, but for this failure, defendant's conviction or sentence would have been reversed." *People v. Griffin*, 178 Ill. 2d 65, 74 (1997).

¶ 30 Though the defendant challenges the constitutional effectiveness of both trial and

appellate counsel, his claim against trial counsel centers on counsel's failure to object to alleged inflammatory testimony from the victim's widow and the alleged misconduct during the State's closing argument. The defendant contends appellate counsel rendered ineffective assistance by not raising trial counsel's professional omissions, which failed to preserve meritorious issues. We examine only the defendant's underlying claims that meritorious issues were evident in the record to determine whether substantial questions of both appellate and trial counsel's ineffectiveness were raised.

¶ 31    The defendant contends that he received ineffective assistance of appellate counsel when counsel failed "to argue that Lorenzo was denied due process when the prosecution deliberately elicited and commented on highly prejudicial evidence about the decedent's widow and children, and trial counsel was ineffective for failing to object to the admission of this evidence." The defendant relies primarily on *People v. Bernette*, 30 Ill. 2d 359 (1964), to argue that the State improperly sought to prejudice the jury against him by commenting on and introducing "irrelevant evidence" about the deceased's family. *Bernette*, a death penalty case, provides little guidance in the instant case.

¶ 32    In *Bernette*, our supreme court explained its finding of prosecutorial misconduct in light of the imposition of the death penalty: "Although we are satisfied from the evidence that the jury was justified in returning a verdict of guilty, and that its action of inflicting the death penalty may well have been warranted, our review may not end with those conclusions, particularly since the jury did select the death penalty. *** In the present case three separate contentions of trial error are advanced as having a *direct relationship* to the jury's selection of the death penalty." (Emphasis added.) *Bernette*, 30 Ill. 2d at 368. The supreme court held that when the State's argument to the jury dwells upon the deceased's family or seeks to relate the defendant's punishment to that family's existence, it is inflammatory and improper. *Bernette*, 30 Ill. 2d at 371; see also *People v. Hope*, 116 Ill. 2d 265, 275 (1986) (another death penalty case where the court noted that evidence the deceased left behind a family had no relationship to the defendant's guilt or innocence).

¶ 33    However, the supreme court made clear that the mere mention of the deceased's family does not *per se* entitle a defendant to a new trial. "In certain instances, *depending on how this evidence is introduced*, such a statement can be harmless; this is particularly true when the death penalty is *not* imposed." (Emphasis in original.) *Hope*, 116 Ill. 2d at 276. "Common sense tells us that murder victims do not live in a vacuum and that, in most cases, they leave behind family members." *People v. Free*, 94 Ill. 2d 378, 415 (1983). "[A] distinction exists between making the jury aware of the family left behind and cases where the prosecution has dwelt upon the deceased's family to the point that the jury would have related that evidence to the defendant's guilt." *People v. Kitchen*, 159 Ill. 2d 1, 33 (1994).

¶ 34    The defendant first argues that the State improperly elicited the evidence regarding the victim's family. We disagree. The evidence was well within the commonsense observation that the deceased left behind a family. *Kitchen*, 159 Ill. 2d at 33.

¶ 35    The State's theory was that the defendant chose to kill his friend rather than pay a gambling debt. The defendant's theory was that the gun went off accidently after he pointed the gun at the victim, but decided, based on his long-term friendship, not to shoot. We cannot

say that the evidence presented by the State was not material to its theory that the shooting was no accident where the defendant, disregarding his long-term friendship, pointed a gun at the victim's head.

¶ 36    The defendant also argues that Maria's description of herself as a widow, her identification of the deceased from a photograph containing the deceased and the couple's youngest child, her testimony regarding the names and ages of the children, her "final" goodbye to the deceased, and the pager message were all irrelevant and prejudiced him in the eyes of the jury. Once again, we disagree that the jury would have related that evidence to the defendant's guilt. *Kitchen*, 159 Ill. 2d at 33.

¶ 37    While some of Maria's testimony might well have been excluded had an objection been made, we decline to find that the testimony itself resulted in an unfair trial for the defendant. See *Strickland v. Washington*, 466 U.S. 668, 689 (1984) (the purpose of the effective assistance guarantee of the sixth amendment is simply to ensure that criminal defendants receive a fair trial). The remarks the defendant now complains of served to illustrate the close relationship between the deceased and the defendant, which in turn cast doubts upon the defendant's claim that the gun went off accidentally after he pointed it at the victim's head. Maria's testimony explained the family's relationship to the defendant and the movements of both the deceased and the defendant on the day of the crime. Her testimony did not highlight her family to the point that the jury might have considered the family's existence as evidence of the defendant's guilt. See *Kitchen*, 159 Ill. 2d at 33.

¶ 38    Nor can we conclude, had appellate counsel challenged this testimony as irrelevant and overly prejudicial on direct appeal, the appeal would have ended in a reversal. See *Griffin*, 178 Ill. 2d at 74 (to establish ineffectiveness of appellant counsel, it must be shown that, but for counsel's omission, the "defendant's conviction or sentence would have been reversed"). These purported errors would constitute *reversible errors* only if they resulted in substantial prejudice to the defendant. *People v. Lucas*, 132 Ill. 2d 399, 437 (1989). Only if the verdict would have been different in the absence of such testimony will a court of review find substantial prejudice. *Id.*

¶ 39    The issue before the jury was whether the shooting of the deceased was intentional or accidental as the defendant claimed in his testimony. Once the defendant elected to take the stand, the believability of the defendant's explanation of the shooting, including his decision to flee to Mexico in the victim's van, only after he borrowed $10 from the victim's wife and solicited her for sex, was for the jury to decide. We reject the defendant's contention that the jury was swayed by the testimony regarding the victim's family over the incredible version of the defendant's own testimony. As the defendant admitted in his testimony, he entered the back seat of the van and sat directly behind the victim because he was "fittin to hurt" Oquendo. Yet he asked the jury to believe that though he pointed the gun at the victim's head, he decided not to fire the gun, but the gun fired without the defendant pulling the trigger.

¶ 40    The defendant finally contends appellate counsel was ineffective on direct appeal when counsel failed to argue the State committed misconduct during closing argument. In our adversarial system, wide latitude is accorded to both counsel during closing arguments. The

State's arguments will lead to reversal only when "the improper remarks constituted a material factor in a defendant's conviction." *People v. Wheeler*, 226 Ill. 2d 92, 123 (2007). Closing arguments "must be viewed in their entirety" and the remarks put in context. *Wheeler*, 226 Ill. 2d at 122. The State may comment on the evidence presented and draw reasonable inferences from that evidence. *People v. Nicholas*, 218 Ill. 2d 104, 121 (2005). Given the procedural posture of this case and under the standard favoring the defendant, we review this claim based on the State's closing argument *de novo*. *People v. Wheeler*, 226 Ill. 2d 92, 121 (2007) (applying a *de novo* standard); *Pendleton*, 223 Ill. 2d at 473.

¶ 41    The arguments presented at closing reflected the respective theories of the case. The defendant argued he would be forever burdened with the knowledge that he had fatally, but accidentally, shot his good friend. The State argued the defendant elected to shoot the deceased rather than pay a gambling debt; it asked the jury to give the victim and his family justice.

¶ 42    Reviewing the closing arguments in their entirety, we cannot say that the State exceeded the wide latitude it is accorded. It was not improper for the State to respond to the defendant's argument that he too was a victim by reminding the jury that the real victim was the deceased and urging the defendant be held accountable for his actions. *Wheeler*, 226 Ill. 2d at 122-23. In light of the defendant's incredible testimony explaining the "accidental" shooting of the victim, we cannot say that appellate counsel's decision not to raise this issue on appeal was objectively unreasonable. See *Griffin*, 178 Ill. 2d at 74. In any event, this limited argument by the State was not a material factor in the defendant's conviction, which precludes a finding of prejudice to meet the second prong of the defendant's ineffectiveness of counsel claim. See *Wheeler*, 226 Ill. 2d at 123.

¶ 43    Finally, we repeat our observation regarding our review of the defendant's direct appeal. *Jones*, No. 1-99-0163 (unpublished order under Supreme Court Rule 23). Much of the prosecutorial misconduct claim the defendant now urges before us was rejected by this court when we considered his plain error claim that he was denied a fair trial. This argument is no more persuasive now than it was then.

¶ 44    The judgment of the circuit court of Cook County is affirmed.

¶ 45    Affirmed.

¶ 46    JUSTICE ROBERT E. GORDON, dissenting:

¶ 47    I respectfully dissent.

¶ 48    Since the opinion omitted defendant's sentence, I add it here for the sake of completeness. For defendant's convictions of first degree murder and possession of a stolen motor vehicle, defendant was sentenced to concurrent terms of 60 and 4 years in prison, respectively.

¶ 49    I. DEFENDANT'S CLAIM CONCERNING THE STATE'S CLOSING

¶ 50    Defendant's first contention is that he was denied due process when the State's closing

argument focused on the widow and child left by the victim. During the State's closing, defendant's trial counsel objected twice to these remarks, and the trial court overruled both objections. In addition, defendant's trial counsel included the issue in a posttrial motion. Thus the issue was preserved for defendant's direct appeal. However, defendant's appellate counsel simply filed an *Anders* motion. *Anders v. California*, 386 U.S. 738 (1967). In this postconviction appeal, defendant claims that his appellate counsel was ineffective for failing to raise this issue which his trial counsel had preserved for appeal.

¶ 51                                A. Not Previously Considered

¶ 52        In considering defendant's postconviction petition, the trial court never ruled on this issue because it concluded that it was precluded from doing so by the appellate court's grant of appellate counsel's *Anders* motion. *People v. Jones*, No. 1-99-0163 (2000) (unpublished order under Supreme Court Rule 23) ("*Anders* order"). As the majority observed, our review is *de novo*. *Supra* ¶ 29.

¶ 53        In addition, this issue was not considered by the appellate court in its *Anders* order. After counsel made an *Anders* motion, defendant responded by raising only one, very specific issue. Defendant claimed that the prosecutor had "explicitly called him a liar 50 or more times during closing arguments" and that these remarks deprived him of a fair trial. *Jones*, order at 1-2. The appellate court found that these "liar" remarks were not preserved for appeal and did not rise to the level of plain error. *Jones*, order at 2, 5. However, the family references at issue in this postconviction appeal were neither raised nor considered in the prior *Anders* order. Thus, the prior *Anders* order has no effect on our decision today.

¶ 54        The majority states that, in the *Anders* order, the appellate court already considered and rejected defendant's claim about the prosecutor's closing remarks. *Supra* ¶¶ 9, 43. However, this statement fails to distinguish between the two very different types of remarks at issue: the "liar" remarks at issue in the *Anders* order, and the family references at issue here. That the *Anders* order took into account only the "liar" remarks is evidenced by the fact that the *Anders* panel applied only plain error review, whereas the family references at issue here would have been subject to a harmless error analysis. *Jones*, order at 5.

¶ 55                          B. Ineffective Assistance of Appellate Counsel

¶ 56        As noted above, defendant claims that his appellate counsel was ineffective for failing to raise claims that his trial counsel had carefully preserved. Claims of ineffective assistance of counsel are governed by the two-prong test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 694 (1984), and adopted by the Illinois Supreme Court in the case of *People v. Albanese*, 104 Ill. 2d 504 (1984). To prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that counsel's performance was deficient; and (2) that this deficient performance prejudiced defendant. *People v. Petrenko*, 237 Ill. 2d 490, 496-97 (2010) (citing *Strickland*, 466 U.S. at 694).

¶ 57        To satisfy the first prong, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms, and to satisfy the second prong, a defendant must show that there is a reasonable probability that, but for counsel's

unprofessional errors the result of the proceeding would have been different. *Petrenko*, 237 Ill. 2d at 496-97 (citing *Strickland*, 466 U.S. at 694).

¶ 58    The majority did not find the prosecutor's remarks improper and thus concluded that appellate counsel's filing of an *Anders* motion was not unreasonable. As a result, the majority did not find it necessary to provide a comprehensive analysis of the second prong of the *Strickland* test. *Supra* ¶ 42 (finding that the prosecutor's remarks were "not a material factor in *** defendant's conviction").

¶ 59                              1. *Strickland's First Prong*

¶ 60    Regarding the first prong, defendant claims that his appellate counsel was ineffective for failing to raise a properly preserved issue, namely, the prosecutor's remarks during the State's initial closing argument concerning the widow and child left behind.

¶ 61    Plaintiff claims that the prosecutor's remarks violated our supreme court's holding in *People v. Bernette*, 30 Ill. 2d 359, 371 (1964). In *Bernette*, our supreme court granted defendant's postconviction appeal and remanded for a new trial where the State elicited evidence and remarked during closing about the murder victim's widow and child. *Bernette*, 30 Ill. 2d at 370-71. Our supreme court reversed defendant's murder conviction, even though defendant had failed to object to the evidence and remarks during trial. *Bernette*, 30 Ill. 2d at 372. In *Bernette*, our supreme court held:

> "[T]his court has consistently condemned the admission of evidence that the deceased left a spouse and a family, inasmuch as such evidence has no relationship to the guilt or innocence of the accused or the punishment to be inflicted upon him, but serves ordinarily only to prejudice him in the eyes of the jury. [Citations.] *** [W]e have held that jury argument by the prosecution which dwells upon the decedent's family or seeks to relate a defendant's punishment to the existence of family is inflammatory and improper." *Bernette*, 30 Ill. 2d at 371 (quoted in *People v. Harris*, 225 Ill. 2d 1, 32 (2007), and *People v. Hope*, 116 Ill. 2d 265, 275 (1986)).

See also *People v. Logan*, 224 Ill. App. 3d 735, 740 (1991) (listing Illinois Supreme Court opinions citing *Bernette* with approval).

¶ 62    In *Bernette*, our supreme court found the following remarks during the State's closing to be improper:

> " '[The victim] had a wife, he had a child and he had a right–he was only 20 years old when he died–to be with that family and to pursue his life and liberty.' " *Bernette*, 30 Ill. 2d at 371.

¶ 63    In the case at bar, the prosecutor had argued during the State's closing:

> "[The] Judge is going to tell you that neither sympathy nor prejudice should influence your decision. One person we can feel sorry for is Jose Orquendo. He's not here. He's not here to live, is not here to breathe, he's not part of this world. You can feel sorry for his wife, his widow. Feel sorry for his son, who will grow up not knowing his daddy."

The trial court then overruled defense counsel's objection. The prosecutor then ended her

closing argument by stating:

> "This is Jose Oquendo's only day. It's his family's only day. Their only day for justice. Their only day for you to do the right thing. [Trial counsel's objection was overruled.] Find defendant guilty of first degree murder and aggravated vehicular hijacking."

¶ 64　　I find that the prosecutor's remarks during closing argument on providing "justice" for the deceased's widow and child were uncalled for. It exceeded the wide latitude given prosecutors during closing argument. I find that appellate counsel's filing of an *Anders* motion, in the face of a well-preserved and legitimate claim, was objectively unreasonable. *Logan*, 224 Ill. App. 3d at 742 (finding appellate counsel ineffective for failing to raise the State's reference to the victim's family, where it "not only was uninvited, it was admitted over the strong objections of defendant").

¶ 65　　In addition, I do not find the State's arguments persuasive.

¶ 66　　First, *People v. Zoph*, 381 Ill. App. 3d 435 (2008), cited by the State, is distinguishable. In *Zoph*, the appellate court held that the remarks in the State's rebuttal closing did not constitute error. *Zoph*, 381 Ill. App. 3d at 451 (finding no error). In *Zoph*, the prosecutor had argued that " 'the defendant is not the only one who has rights. Wanda Walker had the right to live out her golden years in her home with her sister in the safety and sanctity of her own home.' " (Emphasis omitted.) *Zoph*, 381 Ill. App. 3d at 448-49. *Zoph* is distinguishable because the prosecutor's remarks about the rights of the victim and her sister occurred in the State's rebuttal closing, *after* the defense had arguably invited such a response.

¶ 67　　Second, the State argues that the defense sought to elicit sympathy for the defendant during its opening. Adopting the State's argument, the majority holds that "[i]t was not improper for the State to respond to *** defendant's argument that he too was a victim." *Supra* ¶ 42. However, there is no way that the prosecutor's remarks could have constituted an invited response, since the prosecutor's remarks *came first*. Defense counsel's *subsequent* attempt to elicit sympathy for his client has no bearing on the prosecutor's *prior* attempt to solicit a conviction based on sympathy for a widow and child. Thus, I do not find the State's arguments persuasive.

¶ 68　　I also find unpersuasive the majority's attempts to limit the *Bernette* holding to death penalty cases alone. *Supra* ¶ 31 ("*Bernette*, a death penalty case, provides little guidance in the instant case."). The *Bernette* case has been cited hundreds of times in both death penalty and non-death-penalty cases, alike. *E.g.*, *Logan*, 224 Ill. App. 3d at 741, 744 (remanding for a new trial based on *Bernette* in a non-death-penalty case); *People v. Shelton*, 293 Ill. App. 3d 747, 755 (1997) (finding *Bernette* error in a non-death-penalty case but finding the evidence overwhelming and thus the error harmless). *Bernette*'s principles, of trying the accused only on competent evidence and without pleading for widows and children, have universal application.

¶ 69　　　　　　　　　　　　　2. *Strickland's Second Prong*

¶ 70　　I now turn to the second prong of the *Strickland* test. I find that, given the less-than-overwhelming evidence on the one issue in the case, there was a reasonable probability that,

-12-

but for the error, the result of the proceeding would have been different. In the case at bar, the only issue was whether the shooting was accidental or intentional. *Supra* ¶ 39. In support of the fact that the shooting was accidental, the evidence included: (1) the description of the event, testified to by defendant, who was the only event witness testifying at trial; (2) defendant's close friendship with the victim which was testified to by defendant and substantiated by testimony from the victim's wife;[1] and (3) defendant's voluntary surrender to the authorities after an initial flight. After learning from his mother that Chicago police were looking for him, defendant voluntarily surrendered himself to police in Texas. *E.g.*, *People v. Guthrie*, 123 Ill. App. 2d 407, 411 (1970) ("if there is logic in the presumption that only the guilty would flee, then by the same logic it must be presumed that only the innocent would return and surrender themselves to the authorities"). In support of the fact that the shooting was intentional, the evidence included defendant's testimony that he had a gun with him and that he owed the victim money. Given the fact that the evidence was far from overwhelming on the sole issue, there was a reasonable probability that, but for appellate counsel's error in filing an *Anders* brief, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 693 ("a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case").

¶ 71    The majority stresses that we found in the prior *Anders* order that the evidence was not " 'closely balanced.' " *Supra* ¶ 9. However, this fails to take into account that the procedural posture was different. In the *Anders* order, the appellate court was examining unpreserved error. In the *Anders* order, the appellate court observed that the "liar" remarks at issue before it were neither objected to at trial nor raised in a posttrial motion. *Jones*, order at 2. Thus, unlike the family references at issue in this postconviction appeal, the "liar" remarks at issue in the *Anders* order were subject only to plain error review. *Jones*, order at 2.

¶ 72    Thus, I would find that it was error to dismiss defendant's petition at this stage.

¶ 73    II. DEFENDANT'S CLAIM REGARDING THE RULE 651(c) CERTIFICATE

¶ 74    Defendant's second contention is that his postconviction counsel failed to comply with Supreme Court Rule 651(c) because counsel failed to examine all of defendant's *pro se* petitions. Defendant argues that his counsel failed to review his later petitions because counsel chose to list defendant's *pro se* petitions in his Rule 631(c) certificate but omitted the most recent ones.

¶ 75    There seems to be some confusion among the parties about the date of the petitions, since sometimes the parties refer to a petition by the date on the face of the petition and sometimes by the date of the filing stamp. For clarity's sake, I provide below both the dates on the face of the petition and the filing dates.

¶ 76    Defendant filed five petitions, which were:

---

[1]The majority finds that the close friendship between the victim and the defendant "cast doubts upon *** defendant's claim that the gun went off accidentally." *Supra* ¶ 36. I do not see how a close friendship "cast doubts."

(1) dated February 20, 2002, and stamped as filed on March 5, 2002;

(2) dated October 11, 2005, and stamped as received on October 31, 2005;[2]

(3) not dated and not file stamped, but indicated as received on the half-sheet on November 3, 2005;[3]

(4) dated August 16, 2006, and stamped as filed on August 22, 2006; and

(5) dated September 6, 2006, and stamped as filed on September 12, 2006.[4]

All five of the above petitions appear in the appellate record.

¶ 77    On December 16, 2008, counsel filed a Rule 651(c) certificate that stated: "I have not prepared a Supplemental Petition for Postconviction Relief as the petitioner's previously filed *pro se* petitions for postconviction relief filed on February 20, 2002, and October 11, 2005, adequately [set] forth the petitioner's claims of deprivation of his constitutional rights." Thus, the certificate mentioned only the first two petitions.

¶ 78    On February 19, 2009, counsel supplemented his Rule 651(c) certificate with a "Procedural History" of petitioner's case. In this filing, counsel asked the trial court to "allow him leave to submit the attached documents consisting of *the entirety* of Mr. Jones' previously filed claims," as well as other supporting documents. (Emphasis added.) The filing included a list of five attachments. The only petitions listed were the February 2002 petition and the November 2005 petition. Although these were the only two petitions listed, the October 2005 petition appears to have been included as part of the November 2005 petition.

¶ 79    Although counsel's "Procedural History" stated that it was presenting "the entirety" of petitioner's claims, there was no reference to or attachment for the August 2006 petition or the September 2006 petition. Thus, counsel's certificate and "Procedural History" support defendant's contention that counsel never reviewed these documents.[5]

¶ 80    Dismissing defendant's contention, the majority states that a Rule 651(c) certification was never "intended to be a comprehensive recounting" of a postconviction counsel's efforts;

---

[2]This document bears two stamps on the back of its last page. One stamp states that the document was filed on October 1, 2005, and the other stamp states that it was received on October 31, 2005. The October 1 date appears to be wrong since it is before the date that petitioner placed on the face of his document.

[3]Both the State and defense on appeal, as well as postconviction counsel, refer to the same undated document in our record as the November 5 filing.

[4]The State's brief states that the September 2006 petition "does not bear any indication that it was ever seen or received by anyone." I understand how the State missed the file stamp since it appears on the back of the last page.

[5]On appeal, defendant also argues that postconviction counsel failed to review the November 2005 petition. I do not find this argument persuasive, since it was part of his counsel's "Procedural History."

rather, it is merely an indication that postconviction counsel has complied with the minimum requirements of the rule. *Supra* ¶¶ 22, 24. I must respectfully dissent from the majority's holding for several reasons.

¶ 81    First, even though an attorney is under no obligation to list defendant's petitions in the certificate, once he chooses to list them and includes some and fails to include others, a reasonable implication is that he has failed to review the ones that he failed to list.

¶ 82    Second, this implication is supported by the record, namely, by counsel's own description of the case's procedural history. *People v. Bashaw*, 361 Ill. App. 3d 963, 967-68 (2005) (relying on counsel's subsequent remarks to find her Rule 651(c) certificate inadequate).

¶ 83    Third, remanding will further the intent behind Rule 651(c), which was stated clearly by its drafters. The committee's comments to the rule stated that "[t]he last sentence of Rule 651(c) was added in 1969 to implement the decisions of the court with respect to the responsibilities of an attorney representing an indigent prisoner in a postconviction proceeding." Ill. S. Ct. R. 651(c), Committee Comments (eff. Dec. 1, 1984). The committee then cited three Illinois Supreme Court cases. Two of the three cited cases discuss the rule's intent. In these two cases, our supreme court stated: " '[t]he statute can not perform its function unless the attorney appointed to represent an indigent petitioner ascertains the basis of his complaints, shapes those complaints into appropriate legal form, and presents them to the court.' " *People v. Garrison*, 43 Ill. 2d 121, 123 (1969) (quoting *People v. Slaughter*, 39 Ill. 2d 278, 285 (1968)). See also *People v. Perkins*, 229 Ill. 2d 34, 44 (2007) ("the purpose of Rule 651(c) is to ensure that counsel shapes the petitioner's claims into proper legal form and presents those claims to the court"); *People v. Suarez*, 224 Ill. 2d 37, 46 (2007).

¶ 84    The committee's comments and cited cases make clear that the purpose of this section of the rule is to ensure that the attorney ascertains the basis of the petitioner's complaints and shapes those complaints into the appropriate legal form. When an attorney fails to reshape the *pro se* prisoner's petitions and then chooses to provide both an incomplete list of those petitions and an incomplete procedural history, it raises a legitimate question as to whether the attorney has satisfied the purpose of the rule.

¶ 85    Fourth, the majority states that defendant does not contend that postconviction counsel failed to comply with "one of the duties imposed by Rule 651(c)." *Supra* ¶ 24. I find that, by alleging that his counsel failed to read all his petitions, defendant did allege that his counsel violated one of the three duties imposed by Rule 651(c). Rule 651(c) imposes upon counsel the duty to make any "necessary" amendments to defendant's previously filed petitions. Ill. S. Ct. R. 651(c) (rev'd Nov. 30, 1984). The duty to make any necessary amendments to defendant's petitions presupposes that counsel read them first. If counsel had not read them, he or she could not know whether an amendment was "necessary."

¶ 86    Fifth, the majority states that it "find[s] no authority" for defendant's position that, where a defense counsel voluntarily chooses to list defendant's prior petitions in his or her certificate but then provides an incomplete list, "it follows that" counsel reviewed only the ones listed. *Supra* ¶ 24. I assume that the occasions would be very few where a defense counsel, although not required to, chooses to provide a list in his or her Rule 651(c) certificate and then provides an incomplete one.

¶ 87      However, I do find authority for defendant's position in *People v. Bashaw*, 361 Ill. App. 3d 963 (2005). In *Bashaw*, defense counsel's certificate stated that she had consulted with defendant and examined the record concerning the issues raised by defendant's *pro se* petition. *Bashaw*, 361 Ill. App. 3d at 967. However, defense counsel chose to add in her certificate, although it was not required, that defendant wished to rely on his original postconviction petition. *Bashaw*, 361 Ill. App. 3d at 967. Because of both this statement and "[b]ecause postconviction counsel has not certified that she made any necessary amendments," the appellate court concluded that counsel had failed to conduct her own independent review of defendant's petition. *Bashaw*, 361 Ill. App. 3d at 969. Similarly, in the case at bar, where defense counsel has also not certified that he made any amendments and where he chose to mention review of some but not all of defendant's petitions, I conclude that the counsel failed to comply with Rule 651(c). *Bashaw*, 361 Ill. App. 3d at 970 (reversing the dismissal of defendant's postconviction petition).

¶ 88      As authority for its proposition that an incomplete list does not indicate an incomplete review, the majority cites one case in support: *People v. Turner*, 187 Ill. 2d 406, 411 (1999). *Supra* ¶ 24. However, this case does not support the majority's position. The court in *Turner* assumed that postconviction counsel had, in fact, failed to examine the transcripts that he did not include in the appellate record. *Turner*, 187 Ill. 2d at 411 (discussing "[c]ounsel's failure to examine the transcripts"). The *Turner* court held that postconviction counsel was not required to examine these particular transcripts because the docket sheets established that there was nothing of substance that transpired on those days to support defendant's claims. *Turner*, 187 Ill. 2d at 411-12. Our supreme court held: "To require counsel to examine portions of the record which have no relevance to petitioner's claims would be an exercise in futility." *Turner*, 187 Ill. 2d at 412; *Supra* ¶ 25. This holding has no relevance to our case, where there is no docket sheet or other index that would establish the contents of the unexamined petitions.

¶ 89      In addition, there is a difference between what is required of counsel when reviewing the record and what is required when reviewing the petitions. With respect to the record, counsel is required to examine only those portions of the record that might support defendant's claims. *Turner*, 187 Ill. 2d at 411-12. By contrast, with respect to the petitions, counsel is required to make any necessary "amendments to the petitions filed *pro se*," which requires, at a bare minimum, that he read them. Ill. S. Ct. R. 651(c) (eff. Dec. 1, 1984). This difference is reflected in the *Turner* case itself where, in the end, the *Turner* court reversed, due to counsel's failure to make any amendments. *Turner*, 187 Ill. 2d at 414 (holding that "post-conviction counsel's performance *** fell below the level of assistance required by Rule 651(c)," where "[c]ounsel failed to make a routine amendment to the post-conviction petition").

¶ 90      Thus, both *Bashaw* and *Turner* provide authority for defendant's claims and support this dissent.

¶ 91      Sixth, even if I were to find that this certificate, with its omissions, created a presumption of compliance, that presumption was rebutted by the record, namely, by counsel's own

incomplete procedural history and his failure to amend the petition.[6] *People v. Marshall*, 375 Ill. App. 3d 670, 680 (2007) (a presumption of compliance "can be rebutted by the record" (citing *People v. Lander*, 215 Ill. 2d 577, 584 (2005))). See also *Suarez*, 224 Ill. 2d at 47 ("This court has consistently held that remand is required where postconviction counsel failed to fulfill the duties of consultation, examining the record, and amendment of the *pro se* petition ***."); *People v. Wales*, 46 Ill. 2d 79, 80 (1970) (dismissal of postconviction petition reversed where "defendant's *pro se* petition was never amended"). *Cf. People v. Wright*, 149 Ill. 2d 36, 64 (1992) (compliance found, despite the absence of a certificate, because the record showed that counsel had consulted with his client "on numerous occasions," made "a thorough review of the record," and actually "amended defendant's petition").

¶ 92     Seventh, the majority finds significant that defendant has not alleged either "claims not considered" (*supra* ¶ 25) or an amendment that postconviction counsel should have made (*supra* ¶ 26). In essence, the majority is applying a harmless error analysis to defendant's Rule 651(c) claim. However, our supreme court has "consistently declined the State's invitation to excuse noncompliance with the rule on the basis of harmless error." *People v. Suarez*, 224 Ill. 2d 37, 51 (2007). Our supreme court has held that "compliance must be shown regardless of whether the claims made in the *pro se* or amended petition are viable." *Suarez*, 224 Ill. 2d at 52. *People v. Jones*, 43 Ill. 2d 160, 162 (1969) (it is error to dismiss a postconviction petition where there has been inadequate representation, even if "the *pro se* petition itself fails to present a substantial constitutional claim").

¶ 93     For all these reasons, I would reverse the trial court's second-stage dismissal and remand for further proceedings consistent with this opinion.

---

[6]The majority cites *People v. Johnson*, 154 Ill. 2d 227, 238 (1993), for its explanation of counsel's duties. *Supra* ¶ 20. *Johnson* states that "the statute contemplates that the attorney appointed to represent an indigent petitioner will ascertain the basis of the petitioner's complaints, *shape those complaints into appropriate legal form* and present the prisoner's constitutional contentions to the court." (Emphasis added.) *Johnson*, 154 Ill. 2d at 237-38.