**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 200291-U

Order filed May 25, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0291 Circuit No. 11-CF-239 |
| JAMIE LOMELI, | ) ) ) | Honorable Cynthia M. Raccuglia, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE PETERSON delivered the judgment of the court.
Presiding Justice Holdridge and Justice Albrecht concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court properly dismissed defendant's third-stage postconviction petition.

¶ 2    Defendant, Jamie Lomeli, appeals the La Salle County circuit court's third-stage dismissal of her postconviction petition. Defendant contends that postconviction counsel provided unreasonable assistance where he failed to advance her claim of actual innocence. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4          The State charged defendant with felony murder (720 ILCS 5/9-1(a)(3) (West 2010)) for

the death of Dario Hunter. The State also charged codefendants Luis Lomeli, Sylvia Enriquez,

Jason Ward, and Joshua Ward. The evidence adduced at trial showed that defendant sent Hunter a

text message seeking to purchase cocaine for her and her codefendants in the early morning hours

of May 2, 2011. Hunter delivered the drugs to defendant's residence. After Hunter had left, Luis

expressed that he was unhappy with the quality of the cocaine, and Jason suggested that they rob

Hunter. Initially, defendant was not present but entered the room during the conversation. Luis

told defendant to contact Hunter to return so they could rob him. Defendant indicated that Hunter

had a lot of money. Defendant began sending text messages to Hunter and reading his responses

out loud to the group. After agreeing on a price, defendant sent several text messages to determine

whether Hunter would return to the house to deliver the cocaine. The text messages were viewed

from Hunter's phone. The text messages had been deleted from defendant's cell phone. When

Hunter returned, Jason and Luis engaged in a physical altercation with Hunter that led to his death.

Defendant told police that Hunter was injured and bleeding when he arrived at the house. Officers

observed furniture knocked over and large amounts of blood throughout defendant's house.

Enriquez and Joshua testified in exchange for plea agreements with the State. Defendant elected

not to testify. Neither Jason nor Luis testified.

¶ 5          The jury found defendant guilty of felony murder. The court sentenced defendant to 24

years' imprisonment. This court affirmed defendant's conviction on direct appeal. *People v.*

*Lomeli*, 2016 IL App (3d) 130817-U, ¶ 26. Specifically, this court found that Joshua and

Enriquez's testimony, corroborated, in part, by text messages and physical evidence was sufficient

to find that defendant participated in the plan to rob Hunter, and, thus, was guilty of felony murder. *Id.* ¶ 19.

¶ 6 Defendant filed a *pro se* postconviction petition, alleging, *inter alia*, "a claim of actual innocence based on newly discovered evidence." Defendant specified that prior to trial she requested that counsel contact Luis and other witnesses to testify that defendant "had no knowledge or intent to commit the crime of robbery or murder." Defendant continued that her "claim of actual innocence *** is supported by claims of ineffective assistance of counsel and affidavits from persons that would have testified for the defendant." Defendant also alleged the ineffective assistance of trial counsel for failing to "interview and call witnesses" that would testify defendant "did not aid, [abet], solicit, or have knowledge of any plan to commit robbery or murder."

¶ 7 Defendant provided affidavits from Luis, Jason, and Joshua. Luis averred that defendant "did not lure [Hunter] to her house for any reason," and "[defendant's] only intent and purpose for contacting [Hunter] was to buy cocaine ***," defendant also "did not contribute to, or cause, in any way, the death of *** Hunter." Luis stated that Hunter pulled out a knife and tried to rob them before Jason started beating Hunter until Luis stopped him. Jason averred that he took defendant's phone without her knowledge and sent text messages from her phone to Hunter pretending to be defendant. Further, defendant "never once touched *** Hunter in any threatening way or manner," defendant did not know that Jason "was planning on hurting *** Hunter," defendant "had no part of a robbery in any way shape or form," and defendant is "innocent." Joshua averred that defendant "never touched or had part in the beating *** death of *** Hunter." Jason used defendant's phone and "pretended to be [defendant] to lure [Hunter] back to [defendant's] apartment." Defendant's affidavit lacked any information regarding her actual innocence claim.

3

¶ 8    The court advanced defendant's petition to the second stage and appointed counsel. Counsel's amended petition stated that the "gist" of defendant's *pro se* claims were "ineffectiveness of trial counsel" for his "[f]ailure to properly investigate the stories of the co-defendants in this case and to subpoena their testimony at trial," and counsel did not speak to "jailhouse informants that had corroborative admissions by Joshua and Jason" that defendant was not involved in the robbery or murder. Defendant did not provide a new or amended affidavit but included a letter written by Joshua to Jason. Postconviction counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). The court advanced the matter to a third-stage evidentiary hearing.

¶ 9    At the hearing, trial counsel testified that he did not investigate the witnesses that defendant provided. Counsel stated his defense at trial was that "[defendant] participated in ordering the purchase of the said cocaine, but *** nobody told [defendant] that there was going to be a robbery." Counsel did not receive permission to speak with the codefendants prior to defendant's trial. When counsel spoke to Luis after the start of defendant's trial, Luis indicated that defendant "was in the room when they were planning—when they were talking about committing the robbery and when they were sending the text messages to [Hunter]. *** [Defendant] was right there with us." Additionally, Luis "strongly inferred that he would say what he needed to say to help [defendant]." Counsel interpreted Luis's statements to mean that he wanted counsel to "help[ ] him figure out the best testimony" to give in defendant's case. Counsel reviewed several letters from Jason to defendant wherein Jason offered to "help" defendant by pleading guilty and "accept[ing] blame for everybody" as long as defendant and her attorney "[fell] in line and use[d] [Jason's] sacrifice wisely." In return, Jason asked defendant to ensure that he had access to funds while in prison.

4

¶ 10          Counsel did not interview the witnesses that defendant provided because defendant "never notified [counsel] of any witness that was not going to put her there. *** [Defendant] herself had always acknowledged to [counsel] on the record and in interviews that she was present. *** [S]he always acknowledged at least physically doing some of the things the State was alleging" and "none of the information [defendant] gave [counsel] helped [counsel] with trying to get around [defendant] being involved in the robbery[.]" Counsel determined that the information that defendant "never punched any one, *** never had the knife, *** [and] never laid a hand on [Hunter]" would not be helpful to her defense because "the State was conceding that [defendant] didn't intentionally commit any of the physical acts." The State called Joshua, who testified that his affidavit recanting his trial testimony was coerced, false, and written after Jason and Luis "jumped" and threatened him.

¶ 11          Jason testified for defendant that he was the main perpetrator of the murder. Jason took defendant's cell phone without her knowledge and sent the text messages to Hunter, luring him back to the house. Jason admitted to writing a letter that he would "take the case for all of us" as long as he was provided for financially in prison. Luis testified that there were "no statements whatsoever said by [defendant] or anybody in her proximity about a robbery ever." Defendant was not present when Luis helped Jason during the altercation with Hunter. Luis was not in defendant's continual presence that night and did not know the location of her phone. Defendant testified that she let Hunter know that "they wanted more" cocaine. Defendant notified the group that Hunter would return to the residence with cocaine. Defendant's phone was not password locked and it was either on her person or its charger throughout the night. Defendant asked trial counsel to interview Jason and Joshua and call Jason and Luis to testify, but counsel did neither.

¶ 12    The court denied defendant's petition. In its ruling, the court stated that to grant defendant's petition, it would have to find that "either an argument of actual innocence could have existed or ineffective assistance of counsel" and that the evidence presented "may have changed the outcome" of the trial. Specifically, the court found that it was evident that defendant did not participate in the murder, and the witnesses presented would have been "so contradictory" that there was a "potential" that they would have been "extremely unfavorable" to defendant. Thus, counsel's decision not to call these witnesses was "clearly" trial strategy. Defendant appeals.

¶ 13                                    II. ANALYSIS

¶ 14    Defendant argues that postconviction counsel was unreasonable for failing to advance her claim of actual innocence. The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) provides a means by which a criminal defendant can challenge their conviction based on a violation of their constitutional rights. *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). The purpose of postconviction proceedings is to allow inquiry into constitutional issues involved in the original conviction and sentence that were not and could not have been previously adjudicated on direct appeal. *People v. Lucas*, 203 Ill. 2d 410, 417-18 (2002). To be entitled to postconviction relief, defendant bears the burden of making a substantial showing of a constitutional violation in the proceeding, which resulted in the conviction being challenged. 725 ILCS 5/122-1(a) (West 2016); *Pendleton*, 223 Ill. 2d at 471.

¶ 15    The Act provides for three stages of postconviction proceedings. *Pendleton*, 223 Ill. 2d at 471-72. At the first stage, the circuit court must either dismiss the petition if it is frivolous or patently without merit or docket the petition for further consideration. 725 ILCS 5/122-1(a)(2), (b) (West 2016); *Pendleton*, 223 Ill. 2d at 472. At the second stage of the proceedings, the court may appoint counsel for an indigent defendant, who would make any necessary amendments to the

6

petition. 725 ILCS 5/122-4, 122-5 (West 2016); *Pendleton*, 223 Ill. 2d at 471-72. If the allegations in the petition, as supported by the record or accompanied by affidavits, have made a substantial showing of a violation of constitutional rights, the postconviction proceedings advance to a third-stage evidentiary hearing. 725 ILCS 5/122-6 (West 2016); *Pendleton*, 223 Ill. 2d at 472-73. In that case, the defendant may present evidence in support of the allegations in the petition. 725 ILCS 5/122-6 (West 2016); *Pendleton*, 223 Ill. 2d at 472-73.

¶ 16    Here, counsel filed a compliant Rule 651(c) certificate, which gives rise to the presumption that postconviction counsel provided reasonable assistance. *People v. Jones*, 2011 IL App (1st) 092529, ¶ 23. The defendant bears the burden of overcoming this presumption by demonstrating counsel's failure to substantially comply with the duties mandated under Rule 651(c). *Id.* While defendant used the term "actual innocence" in her postconviction petition, defendant couched her claim in terms of ineffective assistance of trial counsel. Postconviction counsel identified this and amended the petition to properly present the ineffective assistance of trial counsel claims. Postconviction counsel recognized that defendant failed to state why the evidence was newly discovered, material, and noncumulative, so as to qualify as a claim of actual innocence. See *People v. Coleman*, 2013 IL 113307, ¶ 84 (a petition alleging actual innocence must present new, material, noncumulative evidence); see also *People v. Robinson*, 2020 IL 123849, ¶ 47 ("Newly discovered evidence is evidence that was discovered after trial and that the [defendant] could not have discovered earlier through the exercise of due diligence."). Any alleged claim of actual innocence would not have been meritorious because defendant knew about the witnesses at the time of trial, and thus, the witnesses are not "newly discovered." *Robinson*, 2020 IL 123849, ¶ 47.

¶ 17    Moreover, in her brief on appeal, defendant has failed to proffer what evidence of actual innocence postconviction counsel did not argue or set forth in the amended petition or at the

7

evidentiary hearing. Our review of the record shows that postconviction counsel included all the evidence and information gathered from defendant but restructured such evidence as an ineffective assistance of trial counsel claim. Therefore, postconviction counsel provided reasonable assistance when he amended defendant's petition to allege the ineffective assistance of trial counsel for failing to investigate and call certain witnesses to exculpate defendant, advancing the petition to a third-stage evidentiary hearing.

¶ 18     Further, we find that the court properly denied defendant's petition after the evidentiary hearing. When a petition has been advanced to a third-stage evidentiary hearing, where fact-finding and credibility determinations are involved, a reviewing court will not reverse a circuit court's decision as to whether there has been a substantial showing of a constitutional violation unless that finding is manifestly erroneous. *Pendleton*, 223 Ill. 2d at 473. "[M]anifest error" is that which is "clearly evident, plain, and indisputable." *People v. Coleman*, 206 Ill. 2d 261, 277 (2002). To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish prejudice, defendant must show there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *People v. Henderson*, 2013 IL 114040, ¶ 11.

¶ 19     We note that on direct appeal, this court found the evidence presented at defendant's jury trial was sufficient to sustain defendant's conviction of murder under a theory of accountability. *Lomeli*, 2016 IL App (3d) 130817-U, ¶¶ 19, 26; see also 720 ILCS 5/5-2(c) (West 2012). Specifically, we found that at trial, both Enriquez and Joshua testified that defendant knew of and

8

participated in the plan to rob Hunter. Text messages from defendant's phone corroborated the testimony. There was no testimony directly contradicting their account.

¶ 20    Defendant's postconviction petition attempted to establish evidence that would contradict the trial testimony that defendant sent the text messages to Hunter asking him to return to the house and otherwise disavow defendant's involvement in the robbery and murder. The circuit court's ruling on the petition involved fact-finding and credibility determinations. Specifically, the witnesses that defendant insisted trial counsel should have called in her defense would have been "so contradictory" that there was a "potential" that the witnesses would have been "extremely unfavorable" to defendant. In denying defendant's petition, the court necessarily found that Jason's testimony that he used defendant's phone without her knowledge incredible. See *People v. Reed*, 2020 IL 124940, ¶ 51 (at a third-stage evidentiary hearing, "the trial court acts as a factfinder, making credibility determinations and weighing the evidence").

¶ 21    We find that even if Luis and Jason had testified at trial consistent with their affidavits and hearing testimony, defendant could not establish prejudice because she did not show that there was a reasonable probability that, but for trial counsel's failure to present this evidence, the result of the proceeding would have been different. See *Henderson*, 2013 IL 114040, ¶ 11. The remaining testimony from Jason and Luis—that defendant did not know about the robbery and was not physically involved in the murder—was the defense presented at trial. We found that the evidence was sufficient to sustain defendant's conviction for murder under a theory of accountability. *Lomeli*, 2016 IL App (3d) 130817-U, ¶¶ 19, 26; *supra* ¶ 19. In light of the evidence that (1) Jason stated that he would "take the case" for all the codefendants as long as he was provided for financially in prison, (2) Luis wanted trial counsel's help to contrive a story and potentially commit perjury to acquit defendant, and (3) defendant testified that she contacted Hunter to purchase more

9

cocaine and notified the group that Hunter was returning to the residence, which was consistent with the evidence at trial, we cannot say that the circuit court's denial of defendant's third-stage petition was manifestly erroneous. See *Pendleton*, 223 Ill. 2d at 473.

¶ 22                                    III. CONCLUSION

¶ 23         The judgment of the circuit court of La Salle County is affirmed.

¶ 24         Affirmed.