2021 IL App (2d) 180840-U
No. 2-18-0840
Order filed April 16, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 05-CF-550 |
| CHESTER MCKINNEY, III, | ) ) ) | Honorable James C. Hallock, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices McLaren and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*: Postconviction counsel provided unreasonable assistance and the trial court erred in denying the defendant's motion to reconsider the dismissal of his postconviction petition at the second stage.

¶ 2    Following a jury trial, the defendant, Chester McKinney, was found guilty of five counts of predatory criminal sexual assault (720 ILCS 5/12-14.1(a)(1) (West 2004)) and nine counts of aggravated criminal sexual abuse (720 ILCS 5/12-16(c)(1)(i) (West 2004)).   The trial court sentenced the defendant to natural life imprisonment on all counts of predatory criminal sexual assault.   The defendant's conviction and sentence were affirmed on direct appeal.   *People v.*

*McKinney*, No. 2-08-1029 (Feb. 9, 2010) (unpublished order under Supreme Court Rule 23). The defendant filed a *pro se* postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2010)). The petition was advanced to the second stage, where the State filed a motion to dismiss the amended petition. The trial court granted the State's motion to dismiss. The trial court also denied the defendant's postjudgment motions to reconsider, which alleged that postconviction counsel provided unreasonable assistance. The defendant appeals from these orders. We reverse and remand for additional proceedings.

¶ 3                                    I. BACKGROUND

¶ 4      As the facts are well known to the parties and set forth in detail in the defendant's direct appeal, we set forth only those facts relevant to this appeal. On August 4, 2005, a superseding 19-count indictment was filed against the defendant alleging various sex offenses against two minors, sisters K.D. and T.D., between the dates of October 31, 2001 and October 31, 2002. During that time frame, K.D. was four years old and T.D. was six years old. Prior to trial, five counts of the superseding indictment were nol-prossed. What remained were five counts of predatory criminal sexual assault and nine counts of aggravated criminal sexual abuse.

¶ 5      At a 2008 jury trial, the minors' parents and stepmother testified as to statements the minors made to them concerning the allegations of sexual abuse against the defendant. The defendant had been dating the minors' mother and thus resided with the minors in the same household for a period of time during which the abuse was alleged to have occurred. Both of the minors testified at trial. Numerous investigators, detectives, and child therapists also testified as to what was discovered through their investigations and discussions with the minors.

¶ 6      Dr. Margo Marie Wolf testified that she was a board-certified family physician. In January 2002, when K.D. was four years old, K.D.'s father had brought her in for an exam because he

suspected sexual abuse. She examined K.D.'s vaginal area but did not see a hymen intact. Dr. Wolf testified that this could have been a normal variant, or it could be an indication that K.D. was penetrated. Dr. Darryl Link, tendered as an expert witness, testified that he conducted a child abuse exam on K.D. on February 13, 2002. He also examined K.D. and T.D. on July 5, 2005. There were not any signs of abuse. Dr. Link testified that visible findings of abuse were rare, and that the lack of such findings did not mean that abuse involving penetration did not occur.

¶ 7 Michael Nance testified that he pled guilty to a burglary charge in exchange for an agreed minimum sentence of six years, conditioned on his testimony in the defendant's case. Based on his criminal history, he had been facing a possible sentence of 6 to 30 years' imprisonment. He had been previously incarcerated for 25 years on an armed robbery conviction. Nance testified that he and the defendant were housed in the same cell block at the Kane County jail for a period of time. In December 2007, just before Christmas, the defendant told Nance that his fiancée had two daughters. When the older girl would go out with the neighbors to the park, the defendant would be left at home alone with the younger girl. The defendant described how he would molest the girl, and the description was consistent with the minors' trial testimony and their statements to others.

¶ 8 The jail supervisor at the Kane County jail testified that the defendant and Nance were housed in the same cell from November 2007 until December 11, 2007. They were not in the same cell at any time during the two weeks prior to Christmas 2007.

¶ 9 The defendant testified on his own behalf and denied the allegations of abuse. He testified that while he was sharing a cell with Nance, he had police reports and other documents concerning his case in the cell. He would leave those documents behind when he went to church at the jail or when he had to leave for court appearances.

¶ 10    Following deliberations, the jury found the defendant guilty on all fourteen counts. The defendant was sentenced to natural life imprisonment on all counts of predatory criminal sexual assault. He was sentenced to concurrent sentences of five years' imprisonment on the remaining counts for aggravated criminal sexual abuse. This court affirmed the defendant's convictions and sentence on direct appeal. *McKinney*, No. 2-08-1029 (Feb. 9, 2010) (unpublished order under Supreme Court Rule 23). On March 30, 2011, our supreme court denied the defendant's petition for leave to appeal. See *People v. McKinney*, No. 111732 (Mar. 30, 2011).

¶ 11    On October 21, 2011, the defendant filed a *pro se* postconviction petition, alleging claims of ineffective assistance of counsel, including that: (1) trial counsel refused to let him waive a jury trial; (2) trial, post-trial, and appellate counsel were ineffective in failing to call an expert witness on sexual assault cases; (3) post-trial and appellate counsel were ineffective in not arguing that trial counsel was ineffective for not calling witnesses that would have testified that K.D. and T.D. had denied being sexually abused by the defendant; and (4) appellate counsel was ineffective in failing to argue that the trial court abused its discretion by not allowing the defense to impeach Nance with evidence of his alcohol and cocaine use. The defendant attached various documents in support of his petition. One of the documents was a record from a January 31, 2002, emergency room exam of K.D. by a Dr. Zwolski. In that report, Dr. Zwolski opined that K.D. was not sexually abused because her hymen was intact and there was no trauma or bruises.

¶ 12    On January 6, 2012, the trial court found that the defendant's claim, that his trial counsel refused his request to waive a jury trial, stated the gist of a constitutional violation and thus advanced the defendant's entire petition to the second stage of proceedings. On May 24, 2012, an order was entered appointing a public defender to represent the defendant. The case was continued

from time to time as three different public defenders appeared for the defendant, each asking for additional time to file an amended petition.

¶ 13    On April 14, 2016, private counsel entered an appearance for the defendant. Postconviction counsel did not appear for a hearing set on June 30, 2016, and the State was not able to reach him. The trial court continued the matter to August 26, 2016. On that date, postconviction counsel again did not appear. He had asked the State to request a continuance and the trial court thus set the matter for September 30, 2016. On September 30, 2016, postconviction counsel appeared and stated that he had read the transcripts and that the defendant had sent him several proposed addendums to the petition. Postconviction counsel stated that he needed additional time because the defendant had witnesses for him to track down and affidavits to obtain. The trial court again continued the matter. Postconviction counsel did not appear at the next status hearing, so it was again continued. On April 12, 2017, postconviction counsel appeared for the status hearing and stated that he needed additional time to prepare the amended postconviction petition because the defendant had just sent him an email with an affidavit from a fellow prisoner that he wanted incorporated into the petition. The matter was continued until June 8, 2017. On that date, postconviction counsel did not appear, and the trial court set June 29, 2017 as the due date for filing the amended petition.

¶ 14    On June 29, 2017, although postconviction counsel failed to appear for a status hearing, he did file an amended postconviction petition. That petition set forth only one claim, that trial counsel was ineffective in failing to call a witness, Wendell Thompson, who would have testified that Nance was providing false testimony in exchange for a reduced sentence. Postconviction counsel asserted that Nance's testimony played an important role in the defendant's conviction because the victims were young and testified to events that occurred years earlier. Postconviction

counsel characterized this claim of ineffective assistance as a claim of actual innocence. Postconviction counsel attached an affidavit from Thompson. In the affidavit, Thompson stated that he heard Nance say he would testify at the defendant's trial because the State was offering him (Nance) a good deal. Thompson also stated that he: (1) told the defendant what Nance said, (2) told the defendant that he (Thompson) would testify to such, and (3) overheard the defendant telling his trial counsel that Thompson would testify as to Nance's statements.

¶ 15    On January 11, 2018, the State filed a motion to dismiss. The State first argued that the defendant's *pro se* petition was untimely because it was filed more than six months after the denial of his petition for leave to appeal. The State acknowledged that the time limit did not apply to claims of actual innocence. The State asserted that the defendant's claim for ineffective assistance of counsel was not a basis to establish actual innocence because such claims had to be based on new or exculpatory evidence. The State argued that Thompson's affidavit was not new evidence, because the defendant was aware of Thompson's potential testimony prior to trial, and it was also not exculpatory, because Thompson's affidavit did not indicate that Nance planned to testify falsely. The State also argued that Thompson's affidavit was not sufficient to establish ineffective assistance of counsel because it was clear at trial that Nance had a motive to testify falsely based on the deal he received from the State and, as such, Thompson's testimony would have been merely cumulative and would not have affected the outcome of the trial. Further, the defendant testified at length at his trial and never mentioned his alleged discussion with Thompson.

¶ 16    After failing to appear for status hearings in January and February, postconviction counsel appeared for a status hearing on March 7, 2018. Postconviction counsel requested time to file a second amended postconviction petition. On May 4, 2018, postconviction counsel filed a second-amended postconviction petition. The petition was essentially the same but additionally argued

that there was no timeliness requirement since the defendant's claim was a claim of actual innocence. Postconviction counsel attached a modified affidavit from Thompson. In the new affidavit, Thompson stated that Nance was to be sentenced on a charge that could result in a 15-year term of imprisonment. Nance told Thompson that he was planning to testify falsely against the defendant in exchange for a better deal.

¶ 17 On May 25, 2018, the State filed a supplemental motion to dismiss. The State reiterated its argument that the defendant's postconviction petition was untimely and that he had not asserted a claim of actual innocence. The State further argued that any failure to call Thompson to testify was not ineffective assistance because the case did not hinge on Nance's testimony.

¶ 18 The State and the defendant appeared for a hearing on the motion to dismiss on August 1, 2018. Postconviction counsel was not present. According to the State, postconviction counsel was quite ill and intended to rest on his written pleadings. The State indicated that it too would rest on the written pleadings. The trial court stated that it would take the matter under advisement.

¶ 19 On August 21, 2018, the trial court granted the State's motion to dismiss. The trial court found that, regardless of whether or not the *pro se* petition was timely, it did not allege a successful claim for ineffective assistance of counsel. The trial court noted that Thompson had an extensive criminal history and that the failure to call a witness with such a background was not unreasonable and that even if Thompson had been called to testify, it would not have changed the outcome of the trial. The trial court also found that trial counsel had provided reasonable assistance as evidenced by the extensive cross-examination of child-therapist Karen Whited, Dr. Wolf, and Nance.

¶ 20 On August 27, 2018, the defendant, unaware that the trial court had dismissed his petition, filed a *pro se* "Motion for Post-Conviction Counsel's *Krankel* Hearing Requesting Counsel's

Withdrawal Immediately from Further Post-Conviction Proceedings." The defendant asserted that postconviction counsel had completely failed to comply with the requirements of Supreme Court Rule 651(c) (eff. July 1, 2017), as he had filed an amended petition without ever speaking to the defendant about the substance of the petition and had not informed the defendant that the State filed a motion to dismiss. The defendant further asserted that the amended petition filed by postconviction counsel was meritless and did not properly respond to the claim that his *pro se* petition was untimely. The defendant requested that the trial court stay the entry of judgment on the State's motion to dismiss and allow a hearing on his motion.

¶ 21    On September 10, 2018, the defendant filed an amended *pro se* motion, reiterating much of what was contained in his original motion. He also asserted that he and his family had made several sacrifices to hire postconviction counsel and that the amended petition filed by postconviction counsel had no factual or legal basis in support of his claim of actual innocence. His claim of actual innocence was based on records showing that the victims had recanted their stories of sexual abuse and that medical records did not support a finding of abuse. The defendant also noted that postconviction counsel failed to make any amendments to his *pro se* contentions, failed to respond to the State's motion to dismiss, and failed to represent him at a hearing on the motion to dismiss.

¶ 22    On October 15, 2018, the defendant filed a *pro se* "Motion Showing Actual Neglect in Post-Conviction Counsel's Representation." The defendant asserted that at the time he filed his motion in August 2018, he was unaware that the trial court had already ruled on the State's motion to dismiss. Thus, his August and September *pro se* motions were filed within the time limit for filing a motion to reconsider or a notice of appeal. Further, postconviction counsel had not informed him that the trial court granted the State's motion to dismiss until September 21, 2018,

more than 30 days after the entry of the order granting the dismissal. The defendant requested that the trial court reconsider its order granting the motion to dismiss. The defendant attached a letter from postconviction counsel, dated September 21, 2018. In that letter, postconviction counsel told the defendant that an appeal would be unavailing because his *pro se* postconviction petition was untimely and without merit, but that, if he wanted to file a notice of appeal, he would need to request leave of court to file a late notice of appeal.

¶ 23    On October 25, 2018, this court granted the defendant's motion to file a late notice of appeal from the trial court's August 21, 2018 order granting the State's motion to dismiss. This notice of appeal was docketed in this court as case No. 2-18-0840.

¶ 24    On November 19, 2018, a hearing commenced on the defendant's *pro se* motions. The defendant stated that he wished to stand on his written pleadings. Postconviction counsel stated that he had correspondence from the defendant that indicated he wanted three issues raised in his amended petition. The first issue was related to the lack of evidence that the victim's hymens were broken. Postconviction counsel did not think this was a fruitful argument because the statute only required contact, however slight, and the lack of a broken hymen was not evidence of a lack of abuse or a lack of penetration. The defendant also wanted to challenge the adequacy of the appellant's brief that was written on direct appeal, but postconviction counsel reviewed the brief and did not find any merit to the allegation. The final allegation was the one postconviction counsel raised in the amended petition, ineffective assistance of trial counsel based on the failure to call Thompson to testify. Postconviction counsel tendered a copy of the correspondence to the trial court in open court. Counsel stated that he had hand-written "letter referencing perjury claim" at the top of the correspondence. Postconviction counsel also provided the trial court with a copy of the *pro se* petition and the appellant's brief from the defendant's direct appeal. Copies of the

documents submitted to the trial court are not included in the record on appeal. In the appellant's brief, the defendant's counsel asserted that she was unable to obtain copies from the trial court judge, who is now retired, or from postconviction counsel.

¶ 25    The defendant stated that postconviction counsel's statements were false, that he never had a conversation with postconviction counsel about the three alleged claims. He wanted postconviction counsel to raise the issues that were raised in his *pro se* petition. The defendant stated that he also had copies of correspondence in which he addressed the claims he wanted raised in his amended petition. The defendant stated that he would mail copies of the correspondence to the trial court. The trial court stated that it would take the matter under advisement.

¶ 26    On December 3, 2018, the defendant sent a letter to the trial court with a number of exhibits attached. In the letter, the defendant asserted that postconviction counsel failed to file an amended postconviction petition in accord with the defendant's expectations, failed to inform him of the status of the post-conviction proceedings, failed to provide him with a copy of the amended petition, repeatedly failed to appear in court at status proceedings, and failed to be present to argue against the State's motion to dismiss, and failed to inform him that the trial court had granted the motion to dismiss. Further, the defendant asserted that postconviction counsel had misrepresented the facts. The defendant had asked postconviction counsel to raise several claims in the amended petition, including the claim of actual innocence, as well as several claims of ineffective assistance.

¶ 27    The defendant attached a letter he sent to postconviction counsel on January 2, 2017. At the top of the letter was hand-written "letter referencing perjury claim." In that letter, the defendant asked postconviction counsel to seriously consider raising his claim of actual innocence. The letter was accompanied by a 33-page written document that included allegations of a claim for actual innocence, wherein the defendant asserted that a "closer scrutiny" of the evidence would show that

he was innocent. The document also included claims for ineffective assistance of trial counsel and of appellate counsel on direct appeal, and allegations that the State used false testimony from the victims' mother and Nance. The claims for ineffective assistance of counsel were different from the claims raised in the defendant's original *pro se* postconviction petition. For example, the defendant asserted ineffective assistance based on the following allegations: trial counsel failed to show Nance had a motive to testify falsely, appellate counsel failed to properly challenge the sufficiency of the evidence, appellate counsel raised weak arguments on appeal, and appellate counsel failed to challenge the constitutionality of the sentencing statutes.

¶ 28    Also attached were copies of letters the defendant sent to postconviction counsel. In a December 14, 2015 letter, the defendant acknowledged that his family had retained postconviction counsel to represent him. In a February 1, 2016 letter, the defendant requested that postconviction counsel enter an appearance on his behalf. In an October 25, 2017 letter, the defendant requested that postconviction counsel send him a copy of the amended postconviction petition.

¶ 29    On December 11, 2018, the trial court entered a written order denying the defendant's *pro se* motions asserting unreasonable assistance of postconviction counsel. With regard to postconviction counsel's statements in court, the trial court found postconviction counsel "credible, experienced, and truthful." The trial court found that postconviction counsel "explained a logical and informed basis for the amended petition he presented on behalf of the defendant." The defendant filed a timely notice of appeal from this order. The appeal was docketed in this court as case No. 2-19-0035. This court granted the defendant's motion to consolidate his appeals.

¶ 30                                    II. ANALYSIS

¶ 31    On appeal, the defendant argues that, because he was denied the reasonable assistance of counsel, the trial court erred in granting the State's motion to dismiss his petition and denying his

*pro se* postjudgment motions to reconsider. At the outset, we note that the State argues that the defendant is not entitled to review of his *pro se* postjudgment filings regarding unreasonable assistance of counsel. The State relies on *People v. Custer*, 2019 IL 123339, ¶ 46, in which our supreme court held that the procedures established in *People v. Krankel*, 102 Ill. 2d 181 (1984), intended to protect a *pro se* defendant's sixth amendment right to effective assistance of trial counsel, do not apply to similar claims of unreasonable assistance by postconviction counsel in purely statutory proceedings commenced under the Act.

¶ 32    Despite the holding in *Custer*, the defendant is still entitled to review of his *pro se* postjudgment motions. While the defendant may have labeled his first *pro se* motion as a request for a "*Krankel* hearing," it was essentially a motion to reconsider the dismissal of his petition on the basis that postconviction counsel provided unreasonable assistance of counsel. Our supreme court has held that a defendant may raise the issue of unreasonable assistance in a motion to reconsider in the trial court and need not wait to raise the issue on appeal. *People v. Johnson*, 2018 IL 122227, ¶ 22. *Custer* is not applicable here because, in his *pro se* postjudgment motions, the defendant did not request a preliminary *Krankel* hearing, which would have been a hearing on whether new counsel should be appointed to represent him on his motion to reconsider. *Custer*, 2019 IL 123339, ¶ 46. Rather, the defendant requested that the trial court grant his motion to reconsider by vacating the dismissal of his petition and allowing new counsel to properly amend his petition. As such, we turn to the merits of the defendant's appeal.

¶ 33    Under the Act (725 ILCS 5/122-1 *et seq*. (West 2010)), petitioners are entitled to a "reasonable" level of assistance of counsel at the second and third stages of postconviction proceedings. *Johnson*, 2018 IL 122227, ¶ 16. That right is not limited to appointed counsel as "[p]rivately retained attorneys must also provide a reasonable level of assistance." *Id.*; see also

*People v. Cotto*, 2016 IL 119006, ¶ 41 (both appointed and retained postconviction counsel must provide a reasonable level of assistance to postconviction defendants at second-stage proceedings).

¶ 34     To ensure a reasonable level of assistance, Rule 651(c) imposes three duties on postconviction counsel. *People v. Perkins*, 229 Ill. 2d 34, 42 (2007); *People v. Richmond*, 188 Ill. 2d 376, 381 (1999). Pursuant to the rule, either the record or a certificate filed by the attorney must show that counsel (1) consulted with the petitioner to ascertain his contentions of constitutional deprivations; (2) examined the record of the trial proceedings; and (3) made any amendments to the filed *pro se* petitions necessary to adequately present the petitioner's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017); *Perkins*, 229 Ill. 2d at 42. "Under Rule 651(c), postconviction counsel has an obligation to present a defendant's postconviction claims in the appropriate legal form, and the failure to do so constitutes unreasonable assistance." *People v. Nitz*, 2011 IL App (2d) 100031, ¶ 18.

¶ 35     To establish unreasonable assistance, a defendant is not required to make a positive showing that his counsel's failure to comply with Rule 651(c) caused prejudice. *Id.* If postconviction counsel does not comply with Rule 651(c), the case should be remanded regardless of whether the claims in a *pro se* or amended postconviction petition have any merit. *People v. Suarez*, 224 Ill. 2d 37, 47 (2007). This compliance is required because the rationale behind Rule 651(c) is that the limited right to counsel under the Act cannot be fully realized when postconviction counsel does not adequately fulfill his or her duties under the rule. *Id.* at 51. However, if postconviction counsel complies with Rule 651(c), a *Strickland*-like analysis, including an evaluation of prejudice, is the appropriate standard to use to determine whether counsel has provided reasonable assistance. *People v. Zareski*, 2017 IL App (1st) 150836, ¶ 59. Substantial compliance with Rule 651(c) is sufficient. *People v. Richardson*, 382 Ill. App. 3d 248,

257 (2008). Our review of an attorney's compliance with a supreme court rule, as well as the dismissal of a postconviction petition on motion of the State, is *de novo*. *People v. Jones*, 2011 IL App (1st) 092529, ¶ 19.

¶ 36    In the present case, the record does not support a conclusion that postconviction counsel complied with Rule 651(c) because it does not show that postconviction counsel made the necessary amendments to the defendant's *pro se* petition to adequately present the petitioner's contentions. At the hearing on the defendant's motion to reconsider, postconviction counsel stated that he had correspondence from the defendant that indicated that the defendant only wanted three issues raised. However, at the September 30, 2016, status hearing postconviction counsel stated that the defendant had "several proposed addendums" and that there were "witnesses" to find and "affidavits" to obtain. Further, the January 2, 2017 letter did not indicate that the defendant only wanted three issues raised. The letter requested that postconviction counsel consider raising a claim of actual innocence. The defendant also attached exhibits with sample write ups for claims related to due process and claims of ineffective assistance of counsel not raised in the *pro se* petition. Further, the record indicates that the defendant sent an email to postconviction counsel on April 11, 2017, concerning the failure to call Thompson to testify. Specifically, at the April 12, 2017 hearing, postconviction counsel stated that he needed more time to file the amended petition because the defendant had just sent him an email with an affidavit from a fellow prisoner that he wanted to incorporate into the petition. Accordingly, the record does not support postconviction counsel's claim that the defendant only wanted three issues raised in the amended petition.

¶ 37    To the extent the trial court found postconviction counsel's claim credible, that determination was against the manifest weight of the evidence. *People v. Beaman*, 229 Ill. 2d 56, 72 (2008) (a trial court's credibility determinations will generally be upheld unless they are against

the manifest weight of the evidence). We acknowledge that the record does not include the documents that postconviction counsel submitted to the trial court at the November 2018 hearing. In his appellant's brief, the defendant asserted that he attempted to obtain those documents from the trial court, who is now retired, and from postconviction counsel, but that those efforts were unsuccessful. However, at the November 2018 hearing, postconviction counsel stated that he had written "letter referencing perjury claim" at the top of the correspondence he had submitted to the trial court. The trial court made copies of the documents submitted by postconviction counsel and gave the copies to the defendant in court. The copy of the January 2, 2017, letter later mailed to the trial court by the defendant had "letter referencing perjury claim" hand-written at the top. This indicates that the January 2, 2017 letter was the correspondence referenced by postconviction counsel at the November 2018 hearing. As noted above, that letter does not support the proposition that the defendant wanted only three issues raised in his amended petition.

¶ 38    Postconviction counsel's unreasonable assistance was exacerbated by the fact that the one claim that postconviction counsel raised, that trial counsel was ineffective for failing to call Thompson to testify at trial to impeach Nance, was without merit. A review of the record showed that failing to call Thompson to testify was reasonable trial strategy, as the record indicates that Thompson had numerous felony convictions that could have been used to impeach his testimony. In addition, if Thompson had been called to testify, it would not have changed the outcome of the trial. The record shows that trial counsel impeached Nance's testimony at trial. Trial counsel established that Nance received an extremely lenient sentence in exchange for his testimony against the defendant, that Nance had access to information about the defendant's case through means other than speaking with the defendant, and that the defendant was not at the Kane County

jail when Nance claimed to have had the conversation with the defendant when the defendant allegedly confessed.

¶ 39    Further, the affidavit that postconviction counsel attached to the amended petition did not support the claim that was raised. Thompson's affidavit attached to the amended petition indicated only that Nance was planning to testify against the defendant. This was not adequate to support a contention of ineffective assistance of counsel. As a result, postconviction counsel had to file a second amended petition with an amended affidavit, which supported the claim in that Thompson stated, in the amended affidavit, that Nance was planning to testify falsely against the defendant.

¶ 40    Postconviction counsel's unreasonable assistance was further exacerbated by postconviction counsel's attempt to construe this claim as a claim of actual innocence so that it could overcome a time bar to defendant's *pro se* petition that did not exist. See 725 ILCS 5/122-1(c) (West 2020) (providing that the time limitation for commencing postconviction proceedings under the Act does not apply to a petition advancing a claim of actual innocence). The claim raised in the amended petition was not a claim of actual innocence as Thompson could not have offered any insight into whether the victims were being truthful regarding the alleged abuse. Further, postconviction counsel conceded that the defendant's *pro se* postconviction petition was untimely when, in fact, it was not untimely. A petition for *certiorari* was due 90 days after our supreme court denied the defendant's petition for leave to appeal on March 30, 2011. See Sup. Ct. R. 13. The defendant's postconviction petition was due six months from the date for filing a *certiorari* petition. See 725 ILCS 5/122-1(c) (West 2020). Thus, the defendant's postconviction petition was due by December 28, 2011. The defendant's petition was not untimely as it was filed on October 18, 2011.

¶ 41    Finally, while the record does not conclusively demonstrate that postconviction counsel failed to consult with the defendant, the record indicates that postconviction counsel never informed the defendant when he filed the amended petition, did not provide him a copy of the amended petition, and did not inform him that the State filed a motion to dismiss. In addition, postconviction counsel did not appear at the hearing to argue against the State's motion to dismiss and did not inform the defendant that the trial court had granted the State's motion to dismiss until September 21, 2018, which was past the time for filing a notice of appeal. The defendant then had to file his own *pro se* motions to reconsider the dismissal order.

¶ 42    We note that it is not necessary for postconviction counsel to amend a petition if the amendment "would only further a frivolous or patently nonmeritorious claim." *People v. Greer*, 212 Ill. 2d 192, 205 (2004). Indeed, "[a]n attorney * * * who determines that defendant's claims are meritless cannot in good faith file an amended petition on behalf of defendant." *Id.* Here, rather than file an amended petition raising only one claim that clearly had no merit, the appropriate procedure, if postconviction counsel found all of the claims in the petition to be frivolous, would have been to stand on the *pro se* petition or seek to withdraw as counsel. *People v. Malone*, 2017 IL App (3d) 140165, ¶ 10.

¶ 43    As the record shows that postconviction counsel failed to comply with Rule 651(c), we remand for further second stage proceedings where the defendant can retain a different attorney or seek appointment of new counsel. New counsel will then have the opportunity to amend the petition as necessary, stand on the defendant's *pro se* petition, or seek to withdraw as counsel.

¶ 44                                   III. CONCLUSION

¶ 45    For the reasons stated, we reverse the judgment of the circuit court of Kane County and remand for additional proceedings consistent with this order.

¶ 46    Reversed and remanded.