2022 IL App (1st) 200914-U
Order filed: September 15, 2022

FIRST DISTRICT
FOURTH DIVISION

No. 1-20-0914

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 10 CR 02949 |
| | ) | |
| CEASAR CAMAYO, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Lampkin and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*: Dismissal of defendant's postconviction petition at the second stage is affirmed, where defendant failed to make a substantial showing that he was provided ineffective assistance of appellate counsel on his direct appeal and nor did he overcome the presumption that he was provided his statutory right to the reasonable assistance of postconviction counsel.

¶ 2    Defendant-appellant, Ceasar Camayo, appeals from the second-stage dismissal of the postconviction petition he filed pursuant to the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122-1 *et seq.* (West 2014)). For the following reasons, we affirm.

¶ 3    On January 25, 2010, defendant was arrested following an incident involving an on-duty Chicago Police officer who was driving in his unmarked vehicle. Defendant was charged with multiple offenses, including two counts of attempted first-degree murder of a peace officer, two

counts of attempted first-degree murder, and four counts of aggravated discharge of a firearm.

¶ 4     At trial, Chicago Police Officer Eric Wier testified that at about 3:30 p.m. on January 25, 2010, he was traveling southbound on the 4700 block of South Throop Street in Chicago. Officer Wier was on covert patrol, wearing civilian clothing, a bulletproof vest, and his police badge around his neck. He was driving an unmarked Dodge Stratus when he came upon a gray sport utility vehicle (SUV) that was stopped and partially blocking the one-way street. Officer Wier stopped several feet back and waited for the SUV to proceed. While he waited, Officer Wier observed a man, whom he later identified in court as defendant, standing outside the passenger side of the SUV speaking to the occupant of that vehicle through the open passenger door. Officer Wier could clearly see defendant's face and noticed a distinctive teardrop tattooed under his right eye. After a short time, Officer Wier honked his horn and motioned for the SUV to move out of his way. Defendant turned to face Officer Wier and moved his hands forward with his thumbs up and his palms outstretched, then walked toward the rear of the SUV. At this time, defendant pulled from his coat a blue steel revolver and aimed it at Officer Wier. As Officer Wier accelerated around the left side of the SUV, defendant moved to the front of the SUV and fired a shot toward Officer Wier. When this shot was fired, Officer Wier's vehicle was "even" with the SUV. As he fled the area traveling southbound, Officer Wier heard another four or five shots being fired toward the rear of his vehicle. Officer Wier sped around the block to 47th and Throop Streets to radio for help. Officer Wier subsequently viewed a lineup and identified defendant as the man who shot at him.

¶ 5     The State also presented evidence at trial of a prior incident involving defendant, pursuant to a motion *in limine* filed by the State in anticipation of an alibi defense raised pretrial in which defendant indicated he would claim that he was at home watching the child he had with his girlfriend at the time of the shooting. That prior incident occurred in 2006, when defendant shot at

and wounded Alan Leslie. Following his arrest for that shooting, defendant denied any knowledge of the incident. However, defendant later admitted he was present at the scene, but that he did not fire the shots. Officer Michael O'Donnell, a detective assigned to the homicide division of the Chicago Police Department, testified that in 2006 he investigated the shooting of Leslie. Officer O'Donnell testified that defendant changed his story three times as to his whereabouts during the time of that shooting, including making a claim that he was with his girlfriend. Defendant ultimately pleaded guilty to a single count of aggravated battery.

¶ 6    After the State rested, the parties agreed to a stipulation as to evidence surrounding gunshot residue (GSR) testing. The parties stipulated that defendant was taken into custody on January 25, 2010, at 4:58 p.m., a GSR test was administered to defendant on that same date at 6:45 p.m., and a proper chain of custody was maintained. The parties further stipulated that Scott Rochowicz, an Illinois State Police crime lab technician, would testify that he administered the GSR test to defendant's hands and his clothing, that the GSR test results showed "[defendant] may not have contacted a PGSR-related item," and that he may not have been in the environment of a discharged firearm. Additionally, it was stipulated that the tests showed defendant may not have discharged a firearm with either hand. Finally, the parties stipulated that Mr. Rochowicz would testify that if defendant had discharged a firearm, the particles had been removed by activity, or had not been detected by the procedure.

¶ 7    The defense rested without presenting any testimony. After hearing closing arguments, the trial court found defendant guilty of two counts of aggravated discharge of a firearm and sentenced him to two concurrent terms of 10 years' imprisonment.

¶ 8    Defendant filed a direct appeal in which he asserted—*inter alia*—that the trial court improperly relied on personal knowledge as to the significance of the negative results of the GSR

test. *People v. Camayo*, 2013 IL App (1st) 111168-U, ¶ 10. Because defendant had not properly preserved this issue for appeal, this court reviewed the matter for plain error and in relevant part concluded that: "Based on the strength and certainty of Officer Wier's eyewitness identification, which was never rebutted or discredited, the evidence cannot be deemed closely balanced for plain-error review." *Id*. ¶13. Defendant's convictions were affirmed. *Id*. ¶ 28.

¶ 9     On March 25, 2014, defendant filed a *pro se* postconviction petition raising numerous claims, including assertions that his trial counsel was ineffective for failing to investigate or present testimony from potential witnesses who had been identified in police reports, and appellate counsel was ineffective for not raising a challenge to the admission of the other-crimes evidence on direct appeal.

¶ 10     Defendant also specifically claimed that trial counsel was ineffective for failing to investigate a potential alibi witness named Alexandra Mendoza, who had been defendant's girlfriend at the time of the charged incident. He alleged that Mendoza would have been able to testify that, before the shooting, she left defendant at home to take care of their newborn son and another young relative while she took her oldest son to a medical clinic. At 3:50 p.m., after hearing shots fired and confronting the shooter, defendant called Mendoza and warned her to be careful on her way home because there had been a shooting. The petition alleged that defendant told trial counsel to speak to Mendoza but that he refused, saying that he was not going to waste his time looking for her. It further alleged that Mendoza had called trial counsel repeatedly and left him messages seeking to speak with him about what she knew but that counsel neglected those calls and messages. Defendant supported this claim with his own affidavit averring counsel's awareness of Mendoza as a possible witness. Although he did not attach an affidavit from Mendoza to the

petition, defendant explained that he was unable to obtain one because they had broken up and she had not spoken to him in three years.

¶ 11    In a written order entered on June 18, 2014, the trial court addressed each of the numerous claims raised in the petition and summarily dismissed the petition as frivolous and patently without merit. As to defendant's several claims that trial counsel had failed to conduct an effective investigation of the case, including a claim that counsel had not interviewed individuals who lived or were near the scene of the shooting, the trial court found that the claims were speculative and did not result in prejudice because this court had found the evidence was not closely balanced on direct appeal.

¶ 12    On appeal from that decision, defendant argued that his petition was improperly dismissed because it set forth arguably meritorious claims of ineffectiveness of trial counsel for failure to investigate and present testimony of the individuals who made statements to the police, as well as arguably meritorious claims of ineffectiveness of appellate counsel for failure to raise the issue of other-crimes evidence. *People v. Camayo*, 2013 IL App (1st) 142349-U, ¶ 13. After concluding that defendant raised an arguable claim that his trial counsel was ineffective for failing to investigate witnesses, this court concluded that the petition was sufficient to withstand summary dismissal at the first stage and we therefore remanded for second-stage proceedings. *Id.* ¶¶ 26-27. We did not address defendant's claim of ineffectiveness of appellate counsel since partial summary dismissals of postconviction petitions are not permitted. *Id.*

¶ 13    After the case was remanded, defendant sent his appointed attorney a letter that contained an affidavit from Mendoza. Mendoza's affidavit averred that, at around 12:45 p.m. on the date of the charged incident, she left defendant at home to watch their newborn baby and a four-year-old boy while she took her older son to a medical clinic. At 3:50 p.m., while she was still at the clinic,

defendant called her and told her to be careful on her way home because there had been a shooting nearby. She arrived home at 4:15 p.m. and watched television with defendant while the two older boys played. At 5:00 p.m., police kicked in their back door and entered their home, eventually arresting defendant. After defendant was arrested, Mendoza repeatedly called defendant's trial counsel to give him this information, but her calls and messages were never returned.

¶ 14    New postconviction counsel was assigned to represent defendant in October 2018, as his prior counsel was leaving the public defender's office. The transcript from the hearing conducted on that date indicates that defendant's new counsel would be contacting defendant's prior postconviction counsel and reviewing prior counsel's case file, and the transcript from the following hearing indicates that defendant's new and prior postconviction counsel had been in communication. In August 2019, postconviction counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), stating that he had consulted with defendant concerning his allegations, had examined the appellate record, and had "conducted additional investigation in this case as it pertain[ed] to his post-conviction petition." The certificate also stated that counsel had not prepared a "[s]upplemental" postconviction petition because defendant's *pro se* petition "adequately set[] forth [his] claims of deprivation of his constitutional rights."

¶ 15    In March 2020, the State filed a motion to dismiss defendant's unamended postconviction petition. With respect to the claim that trial counsel had failed to investigate Mendoza, the State argued that because the petition did not have Mendoza's affidavit attached to it that claim was not properly supported, and it was therefore impossible to determine how the outcome at trial might have been different had she testified. The State also argued that the trial court's admission of evidence concerning the unrelated 2006 incident was not error and that, in any event, any allegation of error had not been properly preserved in the trial court. Finally, the State argued that, because

the issue about the other-crimes evidence (and other issues identified in defendant's petition) lacked merit, appellate counsel had not been ineffective for failing to raise them.

¶ 16    Postconviction counsel did not amend the *pro se* petition or attach any new evidence in response to the State's motion to dismiss, nor did he file a new Rule 651(c) certificate. In July 2020, the court held a hearing on the State's motion to dismiss. At that hearing, postconviction counsel stated that he would "not be filing any additional materials" because he "could not find any further evidence that could be useful" to defendant. During its argument, the State highlighted the absence of an affidavit from Mendoza, and it argued that the absence of any "outside evidence to support the [postconviction] petition" meant that defendant could not show that he was prejudiced by trial counsel's failure to investigate or call witnesses. The trial court granted the State's motion and dismissed Defendant's petition. Defendant timely appealed.

¶ 17    "The Post–Conviction Hearing Act *** provides a method by which persons under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. [Citations.] A postconviction action is not an appeal from the judgment of conviction, but is a collateral attack on the trial court proceedings." *People v. Tate*, 2012 IL 112214, ¶ 8. The petition may be dismissed at the first stage if it is frivolous or patently without merit, otherwise it advances to the second stage. 725 ILCS 5/122-5 (West 2018). At the second stage, the defendant must make a substantial showing of a deprivation of constitutional rights or the petition is dismissed. *People v. Dupree*, 2018 IL 122307, ¶ 28. If such a showing is made, the postconviction petition advances to the third stage where the court conducts an evidentiary hearing. 725 ILCS 5/122-6 (West 2018).

¶ 18    At the second stage, " '[t]he inquiry into whether a post-conviction petition contains sufficient allegations of constitutional deprivations does not require the [postconviction] court to

engage in any fact-finding or credibility determinations.' " *Dupree*, 2018 IL 122307, ¶ 29 (quoting *People v. Coleman*, 183 Ill. 2d 366, 385 (1998)). Rather, at the second stage of proceedings the postconviction court takes "all well-pleaded facts that are not positively rebutted by the trial record" as true. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). Thus, the substantial showing of a constitutional violation that must be made at the second stage is " 'a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, which if proven at an evidentiary hearing, would entitle [defendant] to relief.' " (Emphasis omitted.) *Coleman*, 183 Ill. 2d at 385 (quoting *People v. Domagala*, 2013 IL 113688, ¶ 35).

¶ 19    "At the second stage of postconviction proceedings, the State may file a motion to dismiss the petition." *People v. Graham*, 2012 IL App (1st) 102351, ¶ 31. A petition may be dismissed at the second stage only when the allegations in the petition, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation. *People v. Hall*, 217 Ill. 2d 324, 334 (2005). A second-stage dismissal of a postconviction petition is reviewed *de novo*. *Coleman*, 183 Ill. 2d 366, 389 (1998). We may affirm a second-stage dismissal "on any basis supported by the record." *People v. Stoecker*, 384 Ill. App. 3d 289, 292 (2008).

¶ 20    On appeal, defendant first contends that his petition was improperly dismissed at the second stage because his petition "made a substantial showing that he was denied his constitutional right to the effective assistance of counsel on direct appeal when appellate counsel failed to challenge the trial court's ruling permitting the State to adduce evidence about the 2006 shooting unrelated to the charged offense."

¶ 21    A claim of ineffective assistance of counsel is judged according to the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Lawton*, 212 Ill. 2d 285, 302 (2004). To obtain relief under *Strickland*, a defendant must prove defense counsel's

performance fell below an objective standard of reasonableness and that this substandard performance caused defendant prejudice by creating a reasonable probability that, but for counsel's errors, the trial result would have been different. *People v. Wheeler*, 401 Ill. App. 3d 304, 313 (2010).

¶ 22    Because defendant must make a substantial showing of a constitutional violation to avoid dismissal at the second stage, it is appropriate at this stage to require defendant "to 'demonstrate' or 'prove' ineffective assistance by 'showing' that counsel's performance was deficient and that it prejudiced the defense." *People v. Tate*, 2012 IL 112214, ¶ 19. While defendant must establish both prongs of the two-part test discussed above, a reviewing court need not address counsel's alleged deficiencies if the defendant fails to establish any prejudice. See *Strickland,* 466 U.S. at 687; *People v. Edwards,* 195 Ill. 2d 142, 163 (2001). Indeed, our supreme court has held that "*Strickland* requires actual prejudice be shown, not mere speculation as to prejudice." *People v. Bew,* 228 Ill. 2d 122, 135 (2008). A defendant has the burden of establishing any such prejudice. *People v. Glenn,* 363 Ill. App. 3d 170, 173 (2006). Thus, at the second stage of these postconviction proceedings, defendant had the burden of making a substantial showing that a reasonable probability exists that the outcome would have been different had his counsel's performance been different. *People v. Harris,* 206 Ill. 2d 293, 307 (2002). A " 'reasonable probability' " is " 'a probability sufficient to undermine confidence in the outcome' " of the proceeding. *People v. Simpson*, 2015 IL 116512, ¶ 35 (quoting *Strickland*, 466 U.S. at 694).

¶ 23    In making the argument that his appellate counsel improperly failed to challenge the introduction of evidence about the 2006 shooting at trial, defendant concedes that this issue was not properly preserved for appeal because it was not included in the posttrial motion filed by trial counsel. *People v. Enoch*, 122 Ill. 2d 176, 119 (1988) (to preserve an issue for review, a defendant

must raise an objection both at trial and in a written posttrial motion). Nevertheless, defendant asserts two arguments as to why his appellate counsel was nevertheless ineffective for failing to raise the issue on direct appeal.

¶ 24 First, defendant contends that his appellate counsel should have asked this court to excuse the forfeiture of this issue, noting that "[b]ecause forfeiture is a limitation on the parties, not the court, courts have relaxed the forfeiture rule when its central purpose—that the trial court have the opportunity to review the issue first—has been served." See *People v. Heider*, 231 Ill. 2d 1, 18 (2008) ("In circumstances such as these, where the trial court clearly had an opportunity to review the same essential claim that was later raised on appeal, this court has held that there was no forfeiture."). Noting that the admissibility of this evidence was fully litigated prior to trial in response to the State's motion *in limine*, defendant contends that relaxation of the forfeiture rule was therefore warranted on direct appeal.

¶ 25 However, even if we agreed that appellate counsel's performance fell below an objective standard of reasonableness in failing to make this argument, at the second stage of these proceedings defendant must still make a substantial showing of prejudice: *i.e.*, a reasonable probability that but for appellate counsel's purported error the result on direct appeal would have been different. *Wheeler*, 401 Ill. App. 3d 313. Defendant contends that he made such a showing where such an argument would have been successful on appeal considering: (1) the trial court's reliance upon the other-crimes evidence at trial and the inconsistency of Officer Wier's identification of defendant as the shooter with the GSR testing results, and (3) purported weaknesses in Officer Wier's description of defendant. We disagree.

¶ 26 We note again that at the second stage, only those facts that are not positively rebutted by the trial record are taken as true. *Pendleton*, 223 Ill. 2d 473. While defendant broadly contends that

the trial court relied on the other-crimes evidence at trial, the record reflects that the State originally sought to introduced this evidence for the limited purpose of rebutting an expected alibi defense that was never actually raised at trial. Furthermore, the State never referenced the other-crimes evidence in closing argument and the trial court never mentioned or relied upon the other-crimes evidence in finding defendant guilty.

¶ 27 Additionally, the GSR testing results were not actually inconsistent with Officer Wier's identification of defendant as the shooter. It is true that the parties did specifically stipulate at trial that the tests showed defendant *may not* have discharged a firearm with either hand. However, they also stipulated that it was *also possible* that if defendant had discharged a firearm, the particles had been removed by activity or had simply not been detected by the procedure.

¶ 28 Finally, while defendant cites to purported weaknesses in Officer Wier's description of defendant a "basic tenet of the Act is that the scope of post-conviction relief is limited by considerations of waiver and *res judicata* 'to constitutional matters which have not been, and could not have been, previously adjudicated.' [Citation.] Issues that could have been raised on direct appeal, but were not, and any issues that were decided by a reviewing court generally will not be considered in a post-conviction proceeding." *People v. Simpson*, 204 Ill. 2d 536, 546 (2001). Furthermore, a "petitioner may not avoid the bar of *res judicata* simply by rephrasing *** issues previously addressed on direct appeal." *Id*. at 559.

¶ 29 On direct appeal in this matter, we expressly concluded in response to an assertion of unpreserved error that: "Based on the strength and certainty of Officer Wier's eyewitness identification, which was never rebutted or discredited, the evidence cannot be deemed closely balanced for plain-error review." *Camayo*, 2013 IL App (1st) 111168-U, ¶ 13. Notably, "[p]lain-error review under the closely-balanced-evidence prong of plain error is similar to an analysis for

ineffective assistance of counsel based on evidentiary error insofar as a defendant in either case must show he was prejudiced: that the evidence is so closely balanced that the alleged error alone would tip the scales of justice against him, *i.e., *** that there was a 'reasonable probability' of a different result had the evidence in question been excluded." *People v. White*, 2011 IL 109689, ¶ 133.

¶ 30    As such, defendant may not now avoid our prior conclusion regarding the "strength and certainty of Officer Wier's eyewitness identification, which was never rebutted or discredited," in order to establish that the outcome of his direct appeal would have been different but for appellate counsel's purported ineffective assistance of counsel in presenting another unpreserved error. In sum, on these facts defendant has not shown a reasonable probability that but for appellate counsel's purported error the result on direct appeal would have been different.

¶ 31    Defendant next argues that appellate counsel "could have argued that trial counsel's failure to preserve the issue for review amounted to ineffective assistance of counsel." Once again, however, to succeed on such a claim appellate counsel would have had to demonstrate prejudice resulting from any such ineffective assistance of trial counsel. *Wheeler*, 401 Ill. App. 3d 313. For all the reasons discussed above, defendant has not shown a reasonable probability that the result on direct appeal would have been different had this argument been raised.

¶ 32    Defendant's final argument on appeal is that he was denied his statutory right to the reasonable assistance of postconviction counsel when appointed counsel failed to support defendant's claims regarding trial counsel's failure to contact Mendoza or present her testimony by supplementing defendant's petition with Mendoza's affidavit. As defendant more specifically contends:

    "In this case, Cesar Camayo alleged that trial counsel was ineffective for failing to

investigate a witness who would have testified that Camayo was at home with their child at the time of the charged shooting. The record shows that an affidavit from that witness was available to [counsel], but he inexplicably failed to attach it to Camayo's petition. The failure of [counsel] to obtain and attach available evidence in support of the petition's claims, accordingly, deprived Camayo of his right to the reasonable assistance of counsel."

¶ 33    Under the Act, counsel appointed at the second stage must provide a reasonable level of assistance. *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). To provide a reasonable level of assistance, Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), provides that postconviction counsel: (1) consult with defendant—either by mail or in person—to ascertain his claims of deprivation of constitutional rights; (2) examine the trial record; and (3) amend the *pro se* petition where necessary for an adequate presentation of defendant's contentions. *Suarez*, 224 Ill. 2d at 42. Postconviction counsel's compliance with Supreme Court Rule 615(c) is mandatory and generally shown by the filing of a certificate averring to such performance. *People v. Perkins*, 229 Ill. 2d 34, 50 (2007).

¶ 34    The filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that postconviction counsel provided reasonable assistance during second-stage proceedings under the Act. *People v. Jones*, 2011 IL App (1st) 092529, ¶ 23. The burden is on the defendant to overcome this presumption by demonstrating that postconviction counsel failed to substantially comply with the duties imposed by Rule 651(c). *Jones*, 2011 IL App (1st) 092529, ¶ 23. The presumption of compliance may be rebutted by the record. *People v. Marshall*, 375 Ill. App. 3d 670, 680 (2007). Where postconviction counsel fails to comply with the requirements of Rule 651(c), the proper remedy on appeal is to remand for further postconviction proceedings. See *Suarez*, 224 Ill. 2d 47 (recognizing that our supreme court "has consistently held that remand is required where

postconviction counsel failed to fulfill the duties of consultation, examining the record, and amendment of the *pro se* petition, regardless of whether the claims raised in the petition had merit."). Our review of postconviction counsel's compliance with Rule 651(c) is *de novo. Jones*, 2011 IL App (1st) 092529, ¶ 19.

¶ 35 First, we agree with the State that a rebuttable presumption that postconviction counsel provided reasonable assistance during the second-stage proceedings below was created by the filing of a Rule 651(c) certificate. *Jones*, 2011 IL App (1st) 092529, ¶ 23. Second, we also conclude that defendant failed in his burden to overcome that presumption.

¶ 36 "Fulfillment of the third obligation under Rule 651(c) does not require postconviction counsel to advance frivolous or spurious claims on defendant's behalf. If amendments to a *pro se* postconviction petition would only further a frivolous or patently nonmeritorious claim, they are not 'necessary' within the meaning of the rule." *People v. Greer*, 212 Ill. 2d 192, 205 (2004); *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006) (same). Here, defendant specifically contends that postconviction counsel improperly failed to support defendant's claims regarding trial counsel's failure to contact Mendoza or present her alibi testimony by supplementing defendant's petition with Mendoza's affidavit, in which she averred that defendant was at home with their child at the time of the shooting.

¶ 37 However, an "alibi" is " '[a] defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the relevant time.' " *People v. Mullins*, 242 Ill. 2d 1, 24 (2011), quoting Black's Law Dictionary 84 (9th ed.2009). Mendoza's affidavit cannot support such a defense, however, where she merely averred that she left defendant at home to watch their newborn baby and a four-year-old boy around 12:45 p.m. on the date of the charged incident and did not arrive home until after the shooting at 4:15 p.m.

Mendoza was therefore completely unable to testify as to defendant's exact whereabouts at the time of the shooting. As such attaching this affidavit to defendant's postconviction petition would therefore only further a frivolous or patently nonmeritorious claim, doing so was not "necessary" within the meaning of the Rule 651(c). *Greer*, 212 Ill. 2d at 205. We therefore conclude that the presumption created by the filing of the Rule 651(c) certificate remains, and defendant's argument on appeal must be rejected.

¶ 38    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 39    Affirmed.