**NOTICE**

Decision filed 09/27/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 240160-U

NO. 5-24-0160

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

**NOTICE**

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 13-CF-1557 |
| | ) | |
| WOODROW A. BROWN, | ) | Honorable |
| | ) | Roger B. Webber, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McHANEY delivered the judgment of the court.
Justices Welch and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court did not err in dismissing the petitioner's amended postconviction petition, where he cannot establish a constitutional violation based on the ineffective assistance of trial counsel, or postconviction counsel's lack of compliance with Illinois Supreme Court Rule 651(c). As any arguments to the contrary would lack merit, we grant petitioner's appointed counsel on appeal leave to withdraw and affirm the circuit court's judgment.

¶ 2    The defendant Woodrow A. Brown was sentenced to 30 years in the Illinois Department of Corrections for aggravated battery with a firearm. He appeals from the second-stage dismissal of his postconviction petition. The defendant's appointed attorney in this appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks substantial merit. On that basis, OSAD has filed a motion to withdraw as counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), along with a memorandum of law in support of that motion. The defendant has

1

filed a response. This court has examined OSAD's *Finley* motion and the accompanying memorandum of law, the defendant's response, as well as the entire record on appeal, and has concluded that this appeal does indeed lack merit. Accordingly, OSAD is granted leave to withdraw as counsel, and the judgment of the circuit court is affirmed.

¶ 3                              BACKGROUND

¶ 4                    A. Underlying Incident and Trial

¶ 5     Brown was charged with one count of aggravated battery with a firearm and one count of aggravated discharge of a firearm stemming from a September 18, 2013, incident in which he shot Dyvar Johnson. Johnson was the brother of Brown's girlfriend, Unique Ayers, and the shooting occurred at the apartment in which all three of them lived. At the November 2014 trial, Brown raised the affirmative defense of self-defense. The following facts were detailed in the Fourth District's decision on direct appeal, in *People v. Brown*, 2017 IL App (4th) 150154-U.

¶ 6     At trial, Johnson testified that in September of 2013, he was living in an apartment with Brown and Ayers, as well as Johnson's children and his girlfriend, Angel Lovelace. He testified that when he entered the apartment on September 18, 2013, Brown was in the bathroom and no one else was present. They did not interact, and Johnson went to clean his room. While he was cleaning, Brown left the apartment, and Johnson locked the front door after him. About five minutes after Brown left, Johnson heard knocking at the door. He saw that it was Brown, so he let him in and locked the door behind him. When he turned around, Brown was pointing a shotgun in his face and asking, "Where is my shit at?"

¶ 7     Johnson did not know what Brown was talking about, and asked him what he meant. Brown then asked him where his gun was, and when Johnson replied that he did not know, he heard a clicking sound. He attempted to escape out the front door, but Brown shot him in the left bicep.

2

Brown then ran out the front door, and Johnson fell to the floor. About two minutes later, Johnson got up and left the apartment, where he saw Brown trying to put the shotgun into a duffle bag. He also saw Montrice Weathersby, who also lived in the building, peeking his head out of his apartment. Johnson tried to get into Weathersby's apartment, but he shut his door. Brown punched Johnson in the face twice, and Johnson ran down the stairs and out of the building, where he received help from a passerby.

¶ 8    Johnson testified that his relationship with Brown was not good, and that Johnson did not approve of Brown dating his sister. He tried to break them up because he thought that Brown was abusing Ayers and was involved in some thefts. Johnson denied keeping guns in the apartment. Johnson admitted to having an aggravated battery conviction.

¶ 9    Montrice Weathersby testified that on the day of the incident, he heard a boom, so he opened his apartment door to look outside. He saw Brown in the hallway, putting something in a duffle bag. Weathersby spoke to Brown, who nodded back. Weathersby then saw Johnson come out of his apartment, and heard yelling and screaming. He testified that Johnson had blood on him. As Weathersby went back into his apartment, he heard what sounded like someone getting punched in the face.

¶ 10    The State played a portion of the recording of Detective Roesch's March 24, 2014, interview of Brown. Brown stated that he had "no beef" with Johnson, and denied that Johnson had stolen a gun from him. He added that he had not owned a gun since he was 16 years old. However, he said that Johnson's girlfriend, Lovelace, had lied to Johnson and told him that Brown was stealing money from her and beating Ayers. Brown lived in the apartment where the shooting occurred and had a key to enter. On September 18, 2013, he was using the bathroom when Johnson

3

entered the apartment. Brown left to get a cigar at the gas station and returned with a bag to pack up some clothes for a shower, since the power was turned off in the apartment.

¶ 11   He told Roesch that Johnson came into his bedroom and told him he should pack up all of his things. Johnson confronted him about stealing from Lovelace and beating Ayers. Brown denied the accusations, and they began to argue. Brown said that Johnson used the term "black stone." Johnson was pacing in and out of Brown's room during the argument, and at one point, Brown turned around and saw Johnson brandishing a gun. Brown went for Johnson's legs, and in the ensuing struggle, Brown grabbed the gun. Johnson tried to break away, and Brown fired. He said that he was nervous and scared, and that everything was a blur and happened very fast. After shooting Johnson, Brown left the apartment and got into his car. He put the gun in his bag of clothes and threw the gun in some bushes.

¶ 12   At trial, Brown testified that he was using the bathroom when Johnson entered the apartment on September 18, 2013. He spoke to Johnson, who did not respond. Brown left for the gas station and returned shortly to pack some clothes from his bedroom. Johnson came into his room and told Brown to pack all of his clothes. He accused Brown of stealing from Lovelace and beating Ayers, which Brown denied. During the ensuing argument, Johnson said, "Not black stone, you ain't going to be living there." Brown testified that "black stone" was a gang term that meant a serious threat. Brown continued packing his clothes, and Johnson began to pace between the front room and hallways outside Brown's room, mumbling other threats.

¶ 13   According to Brown's testimony, several minutes later, he turned around and noticed that Johnson had a gun in his hand and was halfway into Brown's bedroom. Brown tackled Johnson, who did not fall, and the two began to wrestle. They ended up in the front room, where Brown

4

ended up with the gun in his hand. They broke apart, and Johnson began to backpedal towards the door with his hands at his sides. As soon as Johnson began to backpedal, the gun went off.

¶ 14    Brown ran out of the apartment without looking at Johnson. He was holding his duffle bag throughout the incident. He ran out of the building without dropping and did not punch anyone. He drove off and dumped the gun in some bushes. Brown turned himself in about six months later. He testified that he shot Johnson because he feared for his life. He had seen Johnson having guns in the apartment about seven times. One time, he pulled a gun from the front-room closet. Brown also stated that Johnson's brother, William Ayers, lived in the apartment with them and kept a gun under the couch. Brown denied bringing a gun into the apartment.

¶ 15    At the conclusion of the trial, the jury found Brown guilty of both charges. The circuit court sentenced him to 30 years' imprisonment for aggravated battery with a firearm.

¶ 16                                B. Direct Appeal

¶ 17    On direct appeal, Brown argued his trial counsel was ineffective for failing to (1) exclude inadmissible evidence, (2) admit admissible evidence, (3) preserve the record for appeal, and (4) adequately prepare for trial and zealously advocate on his behalf. He specifically alleged that counsel failed to impeach Johnson with his prior conviction for obstructing identification, which had been listed in the State's discovery disclosure.

¶ 18    The Fourth District affirmed Brown's conviction, finding that he had not established prejudice resulting from the alleged errors. *Brown*, 2017 IL App (4th) 150154-U, ¶¶ 30-32. The court applied the self-defense elements to the evidence and testimony at trial and determined that, even if the jury found Brown's versions of events more credible than Johnson's, there was no evidence that the danger of harm was imminent and Brown's use of force was necessary, because Brown indicated that Johnson was retreating when he shot him. *Id.* ¶ 30. Therefore, the court

5

concluded that even if trial counsel had not made the alleged errors at issue, the outcome of the trial would have been the same. *Id.*

¶ 19                                  C. Postconviction Petition

¶ 20    A postconviction petition, purportedly signed by Brown, was filed on his behalf on June 13, 2018. The Fourth District detailed the relevant facts in its decision in *People v. Brown*, 2022 IL App (4th) 210222-U. Both the envelope return address and the included documents listed Mount Sterling, Illinois, as Brown's residence. However, the postage stated it was paid in Urbana, Illinois. On June 18, 2018, the circuit court summarily dismissed the petition as frivolous and patently without merit. *Id.* ¶ 8.

¶ 21    On July 16, 2018, Brown filed a *pro se* motion to vacate a void judgment and to reconsider. He asserted that he did not file the postconviction petition and only authorized John Marshall Law School to file a postconviction petition on his behalf. He requested that the June 2018 petition be vacated and withdrawn without prejudice. He also asked for an extension of the deadline for filing an initial postconviction petition to rectify the situation. Brown attached an affidavit, in which he again asserted that he only gave permission to John Marshall Law School to file a postconviction petition, and that neither he nor the school filed the June 2018 petition. In August 2018, the State filed a motion to strike Brown's postjudgment motion.

¶ 22    Brown appeared *pro se* at the circuit court's September 11, 2018, hearing on the pending motions. He asked for counsel, and the court denied his request. Brown told the court that the June 2018 petition was filed by Anne Ogwal, and that he did not tell her to file it. The court stated that it did not think it had the authority to vacate the June 2018 petition and noted that it would probably appoint Brown counsel on another postconviction petition to help Brown prove he did not file the

6

prior petition. The court denied Brown's joint motion and the State's motion to strike. It noted the prior order dismissing the June 2018 postconviction petition still stood.

¶ 23    On January 17, 2020, Brown filed a *pro se* petition for postconviction relief, in which he asserted the petition was past the due date because of circumstances outside of his control. He argued that Ogwal filed a postconviction petition without his consent, and the petition was not signed by him or mailed from his address. Brown also attached Ogwal's affidavit, in which she stated she did not have his consent to file the June 2018 petition, which she filed of her own volition. Brown also included correspondence from John Marshall Law School about his case. Additionally, he asserted that he did not learn that John Marshall Law School was not handling his postconviction petition until October 2019.

¶ 24    In his postconviction petition, Brown alleged he was denied effective assistance of counsel because defense counsel failed to (1) investigate Detective Roesch's recorded interview and (2) obtain and present information about Johnson's reputation for having a violent nature.

¶ 25    On March 31, 2021, the circuit court entered a written order, treating the January 2020 petition as a successive postconviction petition and denying Brown leave to file it. The court found that he had established cause based on Ogwal's filing the June 2018 petition without his consent, but found that he failed to adequately allege prejudice.

¶ 26    On appeal, the Fourth District held that the circuit court erred by treating Brown's *pro se* petition as a successive petition and remanded for second-stage proceedings. *Brown*, 2022 IL App (4th) 210222-U, ¶ 21.

¶ 27    On October 2, 2023, Brown's appointed counsel filed an amended postconviction petition, arguing that trial counsel was ineffective for failing to investigate and introduce evidence of Johnson's violent and aggressive behavior pursuant to *People v. Lynch*, 104 Ill. 2d 194 (1984). He

7

specifically argued that trial counsel should have introduced evidence of Johnson's 2011 conviction for aggravated battery, evidence of one charged and one uncharged domestic batteries committed by Johnson in 2013, and Johnson's prior conviction for obstructing identification from 2010 (a Class A misdemeanor, but with a basis in lying and deceiving). In the petition, Brown acknowledged that he raised ineffective assistance of trial counsel on direct appeal, but argued that *res judicata* and forfeiture did not apply where fundamental fairness so requires. Brown also argued that a defendant is not required to possess knowledge of the victim's reputation before evidence is offered, if the evidence is offered to establish that the victim was the initial aggressor.

¶ 28    On November 28, 2023, the State filed a motion to dismiss, arguing that the petition was untimely, and that the issue raised was barred by waiver and *res judicata*. The State specifically noted that, on direct appeal, the appellate court found that Brown could not show prejudice based on his statement to police and his trial testimony.

¶ 29    The circuit court granted the State's motion to dismiss on January 26, 2024. It found that Brown was not culpably negligent for the untimely filing of his petition. However, the court found that Brown's testimony and statement to police established that Johnson was retreating at the time of the shooting. As such, the court found that the *Lynch* evidence proposed by Brown would not have changed the outcome, and there was no showing of prejudice.

¶ 30                                    ANALYSIS

¶ 31    OSAD argues that dismissal of the petition was proper, and there are no meritorious arguments to the contrary. In the memorandum supporting its *Finley* motion to withdraw as counsel, OSAD identifies two potential arguments that it considered raising on Brown's behalf: (1) whether Brown made a substantial showing of a constitutional violation and (2) whether

8

postconviction counsel complied with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). As both of these issues are without arguable merit, we grant OSAD leave to withdraw.

¶ 32                               A. The Post-Conviction Hearing Act

¶ 33    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)) provides a statutory remedy to criminal defendants who claim that substantial violations of their constitutional rights occurred at trial. *People v. Taliani*, 2021 IL 125891, ¶ 53; *People v. Edwards*, 2012 IL 111711, ¶ 21. A proceeding under the Act is a collateral proceeding, not an appeal from the judgment of conviction. *People v. English*, 2013 IL 112890, ¶ 21. The Act provides for three stages of postconviction proceedings. *People v. Cotto*, 2016 IL 119006, ¶ 26. Our supreme court has discussed the first two stages, relevant here, are as follows:

> "At the first stage, the circuit court determines whether the petition is 'frivolous or is patently without merit.' 725 ILCS 5/122-2.1(a)(2) (West 2010). If the petition is not dismissed at first-stage proceedings, it advances to the second stage. [Citation.]
>
> During second-stage proceedings, the court may appoint counsel for an indigent defendant, who may amend the petition as necessary, and the State may file a motion to dismiss or an answer to the petition. 725 ILCS 5/122-4, 122-5 (West 2010). If the court appoints counsel at the second stage, appointed counsel is required to file a certificate showing compliance with Illinois Supreme Court Rule 651(c), namely, stating that appointed counsel has consulted with the defendant, examined the record of trial proceedings, and made any necessary amendments. Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013); [citation].
>
> At the conclusion of the second stage, the court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional

9

violation. [Citation.] If not, the petition may be dismissed. If the requisite showing is made, however, the petition advances to the third stage, and an evidentiary hearing is held." *Cotto*, 2016 IL 119006, ¶¶ 26-28.

¶ 34 In the present matter, the circuit court granted the State's motion to dismiss the postconviction petition at the second stage. The second stage of proceedings tests the legal sufficiency of the petition, leaving evidentiary questions to be resolved in the third stage. *People v. Domagala*, 2013 IL 113688, ¶ 35. At the dismissal stage, "all well-pleaded facts that are not positively rebutted by the original trial record are to be taken as true." *People v. Coleman*, 183 Ill. 2d 366, 385 (1998). The court does not engage in fact-finding or credibility determinations at this point. *Id.* A motion to dismiss "raises the sole issue of whether the petition being attacked is proper as a matter of law." *Id.*

¶ 35 The dismissal of a postconviction petition "is warranted only when the petition's allegations of fact—liberally construed in favor of the petitioner and in light of the original trial record—fail to make a substantial showing of imprisonment in violation of the state or federal constitution." *Id.* at 382. A second-stage dismissal of a defendant's petition presents a legal question, which we review *de novo. People v. Whitfield*, 217 Ill. 2d 177, 182 (2005).

¶ 36 B. Whether Brown Made a Substantial Showing of a Constitutional Violation

¶ 37 Criminal defendants have a constitutional right to the effective assistance of counsel under the sixth amendment to the United States Constitution and the Constitution of Illinois. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Domagala*, 2013 IL 113688, ¶ 36 (citing *People v. Albanese*, 104 Ill. 2d 504 (1984) (adopting *Strickland*)). To prevail on an ineffective assistance claim, the defendant must demonstrate that counsel's

10

performance was deficient and that the deficient performance prejudiced the defendant. *Id.* (citing *Strickland*, 466 U.S. at 687). More specifically, he must show "that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland*, 466 U.S. at 694).

¶ 38    In reviewing defense counsel's conduct, there exists a strong presumption that the challenged action " 'was the product of sound trial strategy and not of incompetence.' " *People v. Burrows*, 148 Ill. 2d 196, 232-33 (1992) (quoting *People v. Steidl*, 142 Ill. 2d 204, 240 (1991)). When addressing a claim of ineffective assistance, we need not apply the two prongs of the *Strickland* test in consecutive order—if it is easier to dispose of the claim because the defendant failed to sufficiently show prejudice, we need not determine whether counsel's performance was deficient before we consider whether the defendant was prejudiced by the alleged deficiencies. *Id.* at 233; see also *Albanese*, 104 Ill. 2d at 527.

¶ 39    In the amended petition, Brown argued that trial counsel was ineffective by failing to present evidence of Johnson's violent and aggressive character pursuant to *People v. Lynch*. Brown further stated that counsel should have presented evidence of Johnson's 2011 conviction for aggravated battery, two 2013 incidents of domestic battery involving Johnson, and Johnson's 2010 conviction for misdemeanor obstructing identification.

¶ 40    In *Lynch*, our supreme court held that when self-defense is properly raised, evidence of the victim's aggressive and violent character may be offered for two reasons: (1) to show how the defendant's knowledge of the victim's violent tendencies affected "his perceptions of and reactions to the victim's behavior" and (2) "to support the defendant's version of the facts where there are conflicting accounts of what happened." *Lynch*, 104 Ill. 2d at 199-200. If the evidence of the

11

victim's reputation and character is offered to show the defendant's state of mind, the defendant must have known this information about the victim when the alleged self-defense occurred; if it is offered as evidence of the victim's violent nature to establish that the victim was the aggressor, the defendant is not required to possess knowledge of the victim's reputation. *People v. Cruzado*, 299 Ill. App. 3d 131, 136 (1998).

¶ 41 In its motion, OSAD argues that Brown cannot make a substantial showing of prejudice under the *Strickland* standard, for the reasons previously stated by the Fourth District on direct appeal. OSAD refers to the court's findings that, in both Brown's recorded statement to Detective Roesch and in his testimony at trial,

> "the wrestling was over and Johnson was not advancing toward defendant when defendant fired the gun. Moreover, no evidence existed [*sic*] Johnson was reaching for a gun when defendant shot him. Thus, even if the jury found defendant's versions of the incident more credible than Johnson's, the danger of harm was not imminent and defendant's use of force was unnecessary as defendant's versions indicate Johnson was retreating from the altercation. Since defendant's version of the incident did not meet the elements of self-defense, any alleged bolstering of Johnson's version by trial counsel's alleged errors during trial could not have impacted the outcome of defendant's trial. Additionally, any alleged improper evidence would also not have affected the outcome of the trial." *Brown*, 2017 IL App (4th) 150154-U, ¶ 30.

¶ 42 OSAD adds that the proposed *Lynch* evidence of Johnson's reputation and character would have likewise had no impact on the outcome of the trial, because Brown did not allege that he knew of Johnson's prior convictions and domestic battery incidents at the time of the underlying incident. Therefore, the *Lynch* evidence could only have been offered as evidence of Johnson's

12

violent nature to establish that he was the aggressor. See *Cruzado*, 299 Ill. App. 3d at 136. OSAD refers to the abovementioned findings on appeal that Brown's statement to police and testimony at trial establish that at the time of the shooting, the danger of harm was not imminent and the use of force was not necessary because Johnson was retreating. Even if defense counsel had presented this evidence, Brown still would not be able to meet the elements of self-defense. See *People v. Brown*, 406 Ill. App. 3d 1068, 1079 (2011) ("[A]lthough the right of self-defense may justify a use of force, it will not justify the killing of an original aggressor as an act of retaliation or after the aggressor has abandoned the argument."). Thus, his ineffective assistance claim would fail because he could not show prejudice.

¶ 43     In his response, Brown raises three arguments. He first contends that he did know about the evidence of Johnson's violent and aggressive character at the time of the incident. In support, he says that he lived with Johnson, he knew that Johnson spent some time in jail stemming from a domestic violence incident, and he knew Johnson was in a gang and had a gang tattoo. Relatedly, he argues that he was still in imminent danger of harm when he got the gun, because Johnson was a "known violent gang banger" who was angry at Brown for hurting his sister and stealing from him. He contends that it was not reasonable for him to believe that Johnson would have just allowed him to walk out of the apartment, based on Brown's first-hand knowledge of people involved in gangs. Lastly, he argues that the description of the incident he gave to the police was inaccurate—specifically as to whether Johnson was retreating—because he gave the statement six months after the incident, at which point he was fuzzy on the details. He also claims that the evidence showed it was impossible for Johnson to have been retreating at the time he was shot, because all of his injuries were to the front of his body.

¶ 44   We find that Brown's arguments are insufficient to show that he would be able to satisfy the prejudice prong under *Strickland* in order to maintain a claim of ineffective assistance of counsel. Firstly, Brown did not make any argument regarding his knowledge of Johnson's alleged gang involvement, as additional *Lynch* evidence that trial counsel should have investigated and raised. He also did not claim that trial counsel was ineffective by failing to challenge the accuracy or veracity of his statement to the police, or by failing to argue, against Brown's own testimony— that Johnson was retreating. Brown's response does not specify whether his points go toward his postconviction claim of ineffective assistance of counsel. However, even if we read that to have been his intent, he has waived these issues by not including them in his petition. See *People v. Shief*, 2016 IL App (1st) 141022, ¶¶ 50-53 (finding waiver where the postconviction petition did not allege the issue underlying the ineffective assistance of counsel claim); *People v. Reed*, 2014 IL App (1st) 122610, ¶¶ 59-63 (same). Brown cannot raise these issues for the first time on appeal of the dismissal of his petition.

¶ 45   Additionally, we note, firstly, that the jury did hear testimony that Johnson used a gang-related threat against Brown. Secondly, Brown told the police that Johnson "backpedaled" toward the door of the apartment when Brown shot him, which does not contradict Brown's point on appeal that Johnson's injuries were to the front of his body. Thirdly, Brown testified at trial that Johnson was retreating when he shot him—if Brown now claims that his statement to the police was inaccurate on this point, the jury heard both of his versions of events, as well as his statement to the police that everything happened very fast and in a blur. Brown does not present any reason why the jury would not have been able to weigh his statements against all of other evidence in determining credibility. Lastly, Brown fails to overcome the strong presumption that these alleged

14

errors were the result of counsel's sound trial strategy and not incompetence. *Burrows*, 148 Ill. 2d at 232-33.

¶ 46 Regarding the proposed *Lynch* evidence that Brown did raise in his petition, he acknowledged that Johnson's 2011 conviction for aggravated battery was presented at trial. However, he argued that trial counsel should have further explored the facts and circumstances of that incident, and moved to admit this additional information as evidence of Johnson's violent and aggressive character. He does not provide any argument or supporting authority for us to determine that he would have been able to show that the elements of self-defense were present. Without repeating the analysis of the Fourth District on direct appeal, we refer to its decision, quoted above, and find that the same reasoning applies here to defeat Brown's ability to show that he was prejudiced by trial counsel's alleged errors.

¶ 47 We conclude that the argument that Brown made a substantial showing of a constitutional violation in alleging ineffective assistance of trial counsel lacks merit.

¶ 48 C. Whether Postconviction Counsel Provided Reasonable Assistance

¶ 49 OSAD's second potential argument is whether postconviction counsel complied with the requirements of Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). Because the right to counsel in postconviction proceedings is solely derived from statute, petitioners are entitled only to the level of assistance provided by the Act. *People v. Turner*, 187 Ill. 2d 406, 410 (1999); see also 725 ILCS 5/122-4 (West 2022). As there is no constitutional right to the effective assistance of postconviction counsel, "the reasonable level of assistance provided for by the Act is 'less than that afforded by the federal or state constitutions.' " *Cotto*, 2016 IL 119006, ¶ 45 (quoting *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006)).

¶ 50     Rule 651(c) requires that postconviction counsel certify, or the record affirmatively show, that counsel (1) consulted with the petitioner to ascertain his contentions of deprivation of constitutional rights, (2) examined the trial record, and (3) amended the postconviction petition, if necessary, to adequately present the petitioner's claims. Ill. S. Ct. R. 651(c) (eff. July 1, 2017); *Pendleton*, 223 Ill. 2d at 472. Regarding the third obligation, counsel is not required to advance frivolous or spurious claims on the petitioner's behalf. *Pendleton*, 223 Ill. 2d at 472 (citing *People v. Greer*, 212 Ill. 2d 192, 205 (2004)). A Rule 651(c) certificate creates a presumption that postconviction counsel provided a reasonable level of assistance. *People v. Jones*, 2011 IL App (1st) 092529, ¶ 23.

¶ 51     Here, Brown's appointed counsel filed an amended postconviction petition and attached a Rule 651(c) certificate. The certificate stated that counsel had consulted with Brown via phone, mail, electronic means, or in person to ascertain his assertions of deprivation of constitutional rights, had examined the court file and the report of proceedings of the trial, and had made any amendments to the *pro se* petition necessary to adequately present Brown's claims. The State moved to dismiss the amended petition, and counsel filed a reply. At the hearing on the State's motion, postconviction counsel argued in support of the amended petition.

¶ 52     For the reasons previously explained, we agree with OSAD that the claims presented in the amended postconviction petition lack merit and were properly dismissed. However, the record does not show any evidence to rebut the presumption established by the Rule 651(c) certificate that postconviction counsel provided reasonable assistance. See *id*. Here, counsel amended Brown's *pro se* petition, filed a Rule 651(c) certificate, and orally argued the merits of the petition. Furthermore, in his response to OSAD's motion, Brown does not show that postconviction

16

counsel's assistance fell below a reasonable level. Accordingly, we find that this issue would be without arguable merit.

¶ 53                                    CONCLUSION

¶ 54    As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 55    Motion granted; judgment affirmed.